# Barker *v.* Bell.

### *Contest on Probate of Will.*

1. *Organization of jury.* — In the organization of a jury, on the trial of a contest as to the validity of a will, the court may require the entire list of jurors summoned to be exhausted before resorting to talesmen; and when talesmen are summoned, all of them should be drawn and passed on before others are summoned to supply the places of those who have been challenged.

2. *Pleadings; error without injury in framing issue.* — On the trial of a contest, before the Probate Court, as to the validity of a will, if the record shows that the cause was heard on proper issues, errors in the manner of making up those issues, not calculated to affect the judgment, will not be considered as grounds of reversal.

3. *Putting witnesses under rule.* — The proponent of a will, as a party to the proceeding, has a constitutional right to be present at the trial, and, consequently, is not subject to the order excluding the witnesses.

4. *Relevancy of former will as evidence.* — Where the paper propounded for probate bears on its face marks of mutilation, and one of the questions in the case is, whether it was so mutilated by the testator himself, with the intention of cancelling and revoking it, or by his widow after his death, a former will would be relevant evidence for the proponents, as showing a motive on the part of the widow to destroy the latter, if the former bequeathed a greater interest to her than the latter; but if this fact does not appear on the face of the two papers, and is not shown by connecting evidence, the former will is not admissible as evidence.

5. *Mutilation, cancellation, and republication of will.* — A will which is mutilated by the testator, by tearing off the signatures of himself and two of the subscribing witnesses, with the intention of cancelling and revoking it, can only be republished by a subsequent re-signing and written attestation.

6. *Revocation by subsequent will.* — The existence of a subsequent will is sufficient to revoke a former will, without proof of its contents, or of the particulars in which it differs from the former.

APPEAL from the Probate Court of Cleburne.

In the matter of the probate of the last will and testament of William M. Bell, deceased, which was propounded for probate by James H. Bell, Middleton R. Bell, John H. Bell, and Gaston Bell, who were sons of said decedent, and contested by John P. Barker and Jeremiah Smith and their respective wives, who were daughters of said decedent. The grounds on which the probate of said will was contested are thus stated in the record: "1. That said paper propounded is not the last will and testament of said decedent. 2. That if said decedent ever signed the said paper, his signature thereto was obtained by fraud. 3. That if said decedent ever executed and pub-

[Barker *v.* Bell.]

lished said paper as his last will and testament, it was done through and by means of undue influence exercised upon the mind of said decedent. 4. At the time said paper was executed and published, said decedent did not have a sound mind and disposing memory. 5. At the time said paper purports to have been executed and published, said decedent did not have sufficient mental capacity to execute and publish a will. 6. Said paper was not duly executed by the testator as his last will and testament. 7. If said decedent executed and published said paper as his last will and testament, he afterwards revoked the same, by tearing, cancelling, or obliterating the said paper, with the intention of revoking the same by the said decedent himself. 8. If said decedent ever executed said paper as and for his last will and testament, he afterwards revoked the same, by executing another will in writing, subscribed and attested according to the requisitions of section 1930 of the Revised Code. 9. If said said decedent ever executed said paper, he afterwards revoked the same, by causing it to be burnt, torn, cancelled, or obliterated, by another person than himself, in his presence, and by his direction." On each of these allegations issue was joined by the proponents.

The following " additional allegations of contest " were afterwards filed by the contestants : " 1. After the execution of said written instrument propounded for probate, as the last will and testament of said decedent, he tore the same with the intention of revoking it. 2. After the execution of said written instrument propounded for probate, said decedent revoked the same, by the execution of a subsequent will, to wit, in May or June, 1868. 3. After the execution of said paper propounded for probate, the said decedent revoked separately each bequest and devise therein mentioned, by the execution of another will in writing, with the intention of revoking the same ; 4th, or by the execution of a paper signed by said testator, and attested by three witnesses, who subscribed their names thereto as witnesses in the presence of said decedent, and at his request, with the intention of revoking separately each devise and bequest as aforesaid. 5. After the execution of said paper writing propounded for probate, the said decedent revoked the same, by tearing, burning, cancelling, or obliterating the same, with the intention of revoking it. 6. Said instrument is not the last will and testament of said decedent." The proponents joined issue on the 1st, 5th, and 6th of these allegations ; and to the 2d, 3d, and 4th replied " that if the said decedent made and executed another will, of a subsequent date to the will offered for probate, he destroyed said subsequent will, and, after the destruction of the same, duly republished the will now offered for probate." To this replication the contestants de-

[Barker *v.* Bell.]

murred, because : 1st, said replication states merely a conclusion of law ; 2d, said replication does not state any fact as to the republication of said paper propounded for probate ; 3d, said replication is insufficient in law." The court overruled the demurrer, and the contestants then " rejoined, in short, by consent, that said paper writing propounded for probate, after having been revoked as stated in the allegations replied to, was not republished by any instrument in writing, or by any paper writing, signed by the decedent himself alone, or by some other person in his presence, and by his directions, and attested by two witnesses, or by one witness whose name was subscribed thereto in the presence of said decedent ; nor was said paper, after the revocation thereof as aforesaid,. republished by the re-signing or re-writing of said paper by the decedent himself, or by some other person in his presence and by his direction, and the re-attesting thereof by one or more of the subscribing witnesses thereto, or the attesting thereof by any other person or persons as subscribing witnesses, who subscribed their names thereto in the presence of the decedent." The court sustained a demurrer to this rejoinder, and the contestants then joined issue on the replication. To these rulings of the court on the pleadings exceptions were reserved by the contestants.

Several exceptions were also reserved by the contestants to the rulings of the court in the organization of the jury, which are thus stated in the bill of exceptions : " A jury of fifteen men had been drawn by consent, thirteen of whom were summoned and appeared. The names of these thirteen were written on slips of paper, and put in a hat, and twelve jurors were drawn therefrom by the sheriff ; and the proponents were required by the court to pass upon them. They peremptorily challenged one, W. Tolleson. The contestants then moved the court to order the sheriff to summon two talesmen, and place their names in the hat, and draw one therefrom to supply the place of said Tolleson ; but the court refused said motion, and ordered the remaining name in the hat to be drawn ; to which ruling the contestants excepted. The proponents having announced themselves satisfied with the jury, the contestants then challenged W. W. Thrasher for cause, and he was excused. The court then ordered the sheriff to summon two suitable talesmen, and he summoned S. M. Roberts and John J. Burgess, whose names were then placed in the hat ; and the name of said Burgess was then drawn by the sheriff, but he was excused by the court on account of deafness. The name of said Roberts was then drawn, and he was placed on the jury ; and the proponents again announced themselves satisfied with the jury. The contestants then peremptorily challenged W. J. Denson, and asked the court to order the sheriff to summon two talesmen from

the by-standers, and place their names in a hat, and draw one from it to supply the place of said Denson; but the court refused to do so, and required the contestants to pass on the remaining eleven, before ordering talesmen to be summoned; to which ruling of the court the contestants excepted. The contestants having then challenged peremptorily J. O. Wise and L. G. Bennett, the court ordered the sheriff to summon six talesmen, from whom three were drawn to supply the places of those challenged as aforesaid. The contestants then challenged peremptorily A. J. Burgess, one of said talesmen, and insisted that the court should order two other talesmen to be summoned, and have one drawn to supply the place of said Burgess; but the court refused to do so, and ordered one of the three names remaining in the hat to be drawn; to which action of the court the contestants excepted."

The will propounded for probate was dated the 9th day of January, 1868; was signed by the testator, and attested by three witnesses, John Tally, K. Morris, and William Haines; but the name of the testator, and the names of Tally and Morris, were torn off. One of the principal questions in the case was, whether this mutilation was the act of the testator himself, or of his widow after his death. The provision made for the widow by the will was in these words: "I give to my beloved wife, Mary Bell, all the property, or a like in value in property, which she had at the time of our marriage; that it is my expressed will and request that she have the contract which was made and signed mutually by us before our marriage, and at her father's house on the day of our marriage, and nothing more of my estate, neither dower, nor other lands, or yearly support; that it was expressly understood and mutually agreed before our marriage that she retained and kept for her own use, and for the use and benefit of her son, William Perkins, all the property that she then had; and it is my wish and desire that she have that, and nothing more than our written contract, which was, that she is to have one half of the property that I get after our said marriage, which may be ascertained by the date of purchase." This will was produced by the widow, in its mutilated condition, after the death of the testator, on the request of M. R. Bell, and she told him at the time that his father had torn it. When asked for the testator's papers, she first produced another will, dated the 26th day of June, 1867, which contained the following bequest in her favor: "It is my will and request that my beloved wife, Mary E. Bell, have a lifetime, or during her widowhood my part, which is one half of an entire interest in a certain tract or parcel of land, known as the 'Freeman plantation,' in said county, to be held and used in lieu, or as a substitute for dower, in all my

lands in this State and Georgia, during her widowhood only, which is not to vest in her or any other person after marriage to any other man after my death, but to vest and descend to my executors, and to become a common fund in their hands immediately after marriage; but until said marriage, or death, she is to have the exclusive right of possession and control; the other half of said tract of land being the property of my son, James H. Bell, it is my will and request that he admit her to all the rights and privileges as an equal partner with him in every respect. It is my further request, that my said wife have a support from the income or profit of my part of the mills and machinery now in operation, or that may be attached thereto, which is situate on Tallapoosa River, and now in the possession of Jeremiah Smith, myself, and James H. Bell." The proponents offered this former will in evidence, "in connection with the testimony of said M. R. Bell, to show the interest Mrs. Mary E. Bell had under each will, and motive in destroying the one propounded, and as a circumstance for the jury to look to for this purpose, but for no other purpose." The contestants objected to its admission, "on the ground that it was illegal, irrelevant, and inadmissible for any purpose;" and they reserved an exception to its admission by the court.

It was shown on the trial that in May or June, 1868, the testator had executed another will, and told one of the attesting witnesses, at the time he signed it as a witness, that his purpose in doing so was to make a different provision for one of his sons, and thereby render him a competent witness in a pending lawsuit; but this will was not read to the attesting witnesses, nor was it produced on the trial; and there was proof of the testator's subsequent declarations to M. R. Bell, and also to said William Haines (who was at the time the custodian of the will propounded for probate), that he had destroyed this later will, having been informed by a lawyer that his son would be a competent witness for him without it, and that the paper then in the custody of said Haines was his will. The bill of exceptions sets out at length all the evidence adduced on the trial, of which the above is a condensed statement. The witnesses were put under the rule at the commencement of the trial, on motion of the proponents, "except M. R. Bell, one of the proponents, who was a witness for the proponents, who was allowed to be present during the trial, against the objection of the contestants; to which the contestants excepted.

At the request of the proponents, the court gave the following charges in writing to the jury: "Any person of a sound and disposing mind and memory, capable of managing his own business, may make a valid will. Every person capable of

disposing of his property may make such a disposition of it by will as he may see proper. Every person has the right to dispose of his property by will as he pleases ; and whether his will is prompted by pride, partiality, or caprice is immaterial, provided the testator is of sound mind, and the will is not obtained by fraud or undue influence. To make a will effectual to pass real and personal property, it must be in writing, signed by the testator, or some person in his presence, or by his direction, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator. A will can be republished by parol ; but such will, at the time of republication, must have been signed by the testator, and must also have been attested by at least two witnesses, who must have subscribed their names thereto in the presence of the testator ; and such republication must be proved by two witnesses, and the identity of the will spoken of by the testator with that produced must be satisfactorily shown ; but it is not necessary that the will should be present at the time of republication, nor that the subscribing witnesses should prove the republication ; nor need the declaration be made at the same time to the witnesses. If the jury believe, from the evidence, that the will offered for probate was signed by the testator, and attested by at least two subscribing witnesses, who subscribed their names thereto in the presence of the testator, and that the testator afterwards, in May or June, 1868, made another will, which he afterwards destroyed, and, after the destruction of that will, republished the will now offered for probate, and that the testator's name was to the said will when he republished it, and also the names of the subscribing witnesses, and that the will now offered for probate was not torn or mutilated by the testator, or by his direction, but was torn or mutilated by some one else after his death, — then they must find the issues in favor of the proponents. If a will was offered for probate, obliterated, mutilated, or torn, although the presumption of law would be that it was torn by the testator for the purpose of cancellation ; yet no presumption of law arises, when it appears by the evidence that, after the death of the testator, the will had been for some time in the possession of a person in adverse interest to the probate ; and in such a state of facts, the burden of proof is on the contestants, to show that it was done by the testator. Although the making of a second will by the testator would be the revocation of a prior will, yet, if the second will is revoked by the testator, while the prior will is in form precisely as originally written, with the signatures of the testator and subscribing witnesses unobliterated or untorn, then the prior will may be republished by parol, without re-writing or signing. If the

jury believe, from the evidence, that the will offered for probate had not been obliterated or cancelled by the testator, or by his direction, and that he had not in his lifetime torn off or obliterated his own name, either in full, or in part, or those of the subscribing witnesses, but that the will, at the testator's death, was unobliterated, uncancelled, or untorn, and so passed into the hands of his widow, then the will may be admitted to probate, if the jury believe, from the evidence, that the testator had duly republished said will in his lifetime. But if the jury believe, from the evidence, that the will now offered for probate was torn or mutilated by the testator in his lifetime, or by his direction, by tearing off his name and part of the names of the subscribing witnesses, then the jury must find for the contestants; yet, if the jury find that the will was not revoked by the testator, in this or any other way, and that the testator was of sound and disposing mind and memory at the making of said will, and that the same was subscribed by the testator, and attested by at least two subscribing witnesses, who subscribed their name thereto in the presence of the testator, they must find in favor of the proponents. In determining the question, whether the testator tore off his name from the will offered for probate, or otherwise mutilated it, the jury can look to the evidence tending to show that he said he had this will at home, calling it the 'Morris will,' and that it was his will; and that he made these declarations but a short time before his death; and to the credibility and interest of the witness or witnesses who proved that he said that he tore his name off, and that the will was of no account, and if they believed, from all the evidence, that the mutilation of the will was not the old man's act, nor done by his direction, but that he believed, up to his death, that this will was intact, and so declared before his death to as many as two witnesses, and while the will was unmutilated, then they should find in favor of the validity of the will. And if the jury believed, from all the evidence in the case, that the old man did not mutilate the will, by tearing off his name and the names of the subscribing witnesses, nor authorized any one to do it, and that he believed up to his death that this will was intact as when he executed it; then, under the law, he could republish said will by parol, after the destruction of the June will, if such republication was made to as many as two witnesses, although the declarations may not have been made to both at the same time; and if they find such to be true from the evidence, they should find in favor of the validity of the will."

To this charge, "and to each separate part thereof," the contestants excepted; and they now assign it as error, together with all the other rulings of the court to which, as above stated, they reserved exceptions.

[Barker v. Bell.]

JAMES AIKEN, for, appellants.

FOSTER & FORNEY, ELLIS & CALDWELL, contra. ·

B. F. SAFFOLD, J. — In a contest about the validity of a will, there is no error if the court requires the list of jurors summoned for the trial to be exhausted before resorting to talesmen. When two talesmen are summoned, from whom to supply the place of a rejected juror, both should be drawn before summoning others. A party is not entitled to talesmen until he has passed on each of the jury presented to him for challenge. He has no right to challenge one, then have two talesmen summoned, see how he likes them, challenge another, and repeat the proceeding. This is pure speculation, not even allowed to the accused in jeopardy of his life. Rev. Code, § 4177.

2. The republication of a will is a mixed question of law and fact. But there is enough of fact in it to make it a sufficient reply to the objection that the testator made a subsequent will, when coupled with the allegation that he destroyed such subsequent will before the republication. The republication of a will, whether express or constructive, must contain the essential ingredient, that, being in writing, and signed by the testator, he makes it known as such to a competent number of witnesses, whose attestation is made in writing, in the presence of the testator. 1 Jarm. on Wills, 73, 173 ; Rev. Code, §§ 1930–1933. There are authorities that republication may be made by parol. But none such exist in our reports. The tendency of our law is towards more stringency in the execution of wills. Once, a will of personalty needed no attestation. The issue to be made up in the Probate Court must be one decisive of the controversy on its merits, and consequently this court will review only such exceptions to the pleadings as are necessary to that end. If it appear from the record that the cause was heard on proper issues, errors in the manner of making up the issues, not calculated to affect the judgment, will not be considered as grounds for reversal.

3. The proponent of a will, as a party, has a constitutional right to be present at the trial. St. Const. Art. I. § 12. He must, therefore, be excepted from the rule separating the witnesses. The *chance* of the opposite party to interrupt a concerted story is not equal to the party's *right* to testify, and to prosecute or defend his cause.

4. The will of 1867 would have been proper evidence for the proponents to prove that the one propounded, and which revoked the other, had been mutilated by Mrs. Bell, and not by the testator, by exhibiting a motive in the greater interest be-

queathed to her by the former, if that fact had been made to appear from it, or by means of other connecting evidence. But such was not the case. No valuation of the two bequests was given, and nothing was shown to implicate her, except an opportunity to tear the will.

5. The law of the republication of a will, as applicable to this case, is fully and explicitly stated in this same case. *Barker* v. *Bell*, 46 Ala. 216. The will propounded has the names of the testator and two of the three subscribing witnesses torn off. Such a mutilation must be accounted for. There must be some belief about how it occurred, on the part of the court or jury. The presumption depends upon the circumstances. If it was a revocation, then the will cannot be republished, except by a re-signing, and another written attestation. No extremity of circumstances could prevent the testator from having his name affixed, if he was capable of procuring the indispensable attestation. The due appreciation of what he was doing is inconsistent with a belief on his part that his will need not bear his signature.

6. The point is made for the proponents that, in order to revoke a will it is not sufficient that the existence of a subsequent will should have been found by the jury; but it must be found different from the former, with the nature of the difference. The proposition is not correct. One of the ways of revoking a will is by making a subsequent one. Rev. Code, § 1932. The making of a subsequent will, and the destruction thereof, does not revive any will previously executed. Ib. § 1933. It is not necessary that the subscribing witness should know anything of the contents of the will. Therefore, unless the existence of the subsequent will, not shown to be a mere codicil, is alone sufficient to revoke the former, its destruction alone would revive it.

If it be conceded that there was a will of later date than the one propounded, the record discloses no proof of a valid republication of the latter. If there was no subsequent will, the mutilation of the other becomes the essence of the controversy. Upon this issue, the credibility of witnesses may be attacked and defended in due form, about which there is no uncertainty.

The judgment is reversed, and the cause remanded.