HEZEKIAH W. WILLIAMS *vs.* EZRA SPENCER & others.

Worcester.    October 1, 1889. — January 1, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Probate of Will — Attesting Witness — Evidence — Opinion.*

An attesting witness to a will may, at the probate thereof, give the opinion which he had at the time of its execution in regard to the testator's sanity, but not an opinion which he has subsequently formed.

·At the trial of a probate appeal, a witness, at whose house the testatrix, who died in 1888, stayed from April to August, 1885, testified that he saw her a few times after her husband's death, in 1884, and that afterwards while she was at his house he never saw any change in her intelligence, coherence of speech, or memory, and gave accounts of several conversations and acts tending to show soundness of mind.    The appellant then offered evidence, to contradict the witness, that after the testatrix's death he had declared that he had never seen her since her husband's death when she was fit to make a will, which evidence was excluded.    *Held,* that the appellant had no ground of exception.

APPEAL from a decree of the Probate Court allowing the will of Polly Crosby, who died on June 3, 1888, and appointing the appellee, Hezekiah W. Williams, administrator of her estate with the will annexed.    Trial in this court before *Devens,* J., who allowed a bill of exceptions, in substance as follows.

The will was executed on March 25, 1885.    This issue was submitted to the jury : Was Polly Crosby, at the time of the

making and execution of this will, of sound and disposing mind and memory? The appellee called the attesting witnesses to the will, none of whom testified that the testatrix was in their opinion of sound mind at the time of executing the will. One witness testified that he formed no opinion on the subject at the time he witnessed the will, but had an opinion at the time of the trial, which had been formed in part from what he had seen and heard since, and in part from what he saw at the time; and in cross-examination the appellants proposed to ask him what his present opinion was as to the soundness of the testatrix's mind at the time of the execution of the will. The question was excluded, and the appellants excepted.

The appellee called one Upham, whose wife was a relative and legatee, and at whose house the testatrix stayed as a visitor from April 20, 1885, till August 22, 1885. He testified that he saw her a few times after her husband died, in November, 1884, and before she came to his house, as above stated; that while she was at his house he never saw any change in her intelligence, coherence of speech, or memory, and gave accounts of several conversations and acts tending to show soundness of mind. The appellants, for the purpose of impeaching his evidence, offered evidence tending to show that, since the testatrix's death, the witness had declared that he had never seen her since her husband died when she was fit to make a will. The evidence offered was excluded, and the appellants excepted.

The jury answered the issue in the affirmative; and the appellants alleged exceptions.

*F. P. Goulding*, (*J. M. Cochran* with him,) for the appellants.
*W. S. B. Hopkins*, (*H. J. Clarke* with him,) for the appellee.

KNOWLTON, J. How far the opinion of witnesses as to the mental condition of a testator may be received in evidence in proceedings to establish the validity of a will, is a question about which there is a great conflict of authority. In this Commonwealth, and in the courts of common law in England and in many of the States of this country, it is held that an ordinary witness cannot give a mere opinion, whatever opportunities of observation he may have had. On the other hand, in the ecclesiastical courts of England, and in many courts in the United States,

all witnesses have been permitted to give, not only facts upon which an opinion may properly be formed, but their opinions founded on those facts. It is universally held that an attesting witness may give his opinion, formed at the time, as to the sanity or insanity of the testator when the will was executed. In those courts where opinions are admitted on the ground that conclusions in regard to the mental condition of another, formed by one who has had an opportunity of observing him, are in themselves valuable and unobjectionable as evidence, there may be good reasons for holding that the final opinion of the witness at the time of the trial should be received. But where a different doctrine is held, the opinions of attesting witnesses to a will stand upon a peculiar ground. The witnesses are chosen by the testator, and are thereby, under the law, charged with an important duty in relation to the execution and proof of the will. It may be presumed that in the performance of that duty they will observe carefully the appearance of the testator at the time, and form an opinion as to his sanity. That opinion naturally and properly may determine their action in signing or refusing to sign as witnesses. It is regarded as a fact of some significance which enters into the transaction, and which the court should be permitted to know and consider like any other fact touching the execution of the instrument. Upon this theory, the opinion of an attesting witness formed at another time, before or after the execution of the will, should stand like that of any other witness. It might be competent in cross-examination to affect the value of his testimony as to his conclusion at the time of attestation, but it could not be received on account of the value to be attached to it as a mere opinion.

In *Poole* v. *Richardson*, 3 Mass. 330, the court permitted the witnesses to give "the judgment they formed of the soundness of the testator's mind at the time of executing the will." In *Robinson* v. *Adams*, 62 Maine, 369, 409, referring to the time of execution of a will, the court say, "It is the opinion then formed that is admissible." In *Clapp* v. *Fullerton*, 34 N. Y. 190, it is said of the facts testified to by the witnesses, which occurred at the time of attesting, that "it is legitimate to give them such additional weight as may be derived from the conviction they produced at the time." The rule is stated to be,

that subscribing " witnesses are permitted to testify as to the opinion they formed of the testator's capacity, at the time of executing his will." 1 Jarm. Wills, (4th Am. ed.) 76. Redfield says, " It is admitted in nearly all the cases that the subscribing witnesses to the will are competent to express an opinion of the testator's apparent sanity at the time of execution." 1 Redf. on Wills, (4th ed.) 140. The only case to which we have been referred which decides that a subscribing witness may give an opinion formed afterward, is *Runyan* v. *Price*, 15 Ohio St. 1 ; and in Ohio all witnesses who have had an opportunity of observing a testator are permitted to give their opinions, founded on what they have seen.

We are of opinion that, under the authorities in this Commonwealth, the testimony of the attesting witness was rightly excluded.

Whether the declaration of the witness Upham, offered to contradict him, should have been received, depends upon whether it was inconsistent with his former testimony. If it be assumed that the expression " fit to make a will " referred to the mental condition of the testatrix, and that it is generally known that a person of full age and sound mind is fit to make a will, and if we disregard the differences of opinion that may be presumed to exist as to what constitutes soundness of mind or fitness to make a will, we cannot say that the declaration was contradictory to the previous testimony. It may or may not have been, according as the facts not reported were of one kind or of another.

The witness " gave accounts of several conversations and acts tending to show soundness of mind." That certain facts indicating that the testatrix was of sound mind could be shown by his testimony, did not necessarily imply that he believed her to be sane. We do not know the full significance of those acts and conversations, and other facts within his knowledge may have shown that she was insane. Upon this ground, the case of *Hubbell* v. *Bissell*, 2 Allen, 196, is an authority in favor of the ruling. Nor upon the facts reported can we say that his testimony that " he never saw any change in her intelligence, coherence of speech, or memory " while she was at his house after the death of her husband proves that he believed her to be fit to make a will. So far as the bill of exceptions shows, and

so far as we have information from any source, she may have been all her life of such mental capacity and condition as to make it doubtful whether she was ever of sound mind, and the witness may have always considered her unfit to make a will.

The unreported facts of the case may have been such as to make the evidence competent. If the testimony had been received and the appellee had excepted, we should have assumed on this bill of exceptions that they were so. But against the excepting party, who must establish the error on which he relies, we must assume that they were not.

*Exceptions overruled.*