(80 South. 499)

MILLER et al. v. WHITTINGTON.
(4 Div. 738.)

(Supreme Court of Alabama.    May 30, 1918.
On Rehearing, Nov. 14, 1918.)

1. WILLS ⬅277—CONTEST—PLEADING—STATUTE.

On contest of probate of will in probate court, under Code 1907, § 6196, and by analogy to sections 6207, 6209, proponent, by permission of court, may specifically set out issues of fact to be tried by way of replication, and, if such proceedings are prolix, redundant, unnecessary, or improper, parts transcending rules of pleading should be stricken on motion.

2. WILLS ⬅277—CONTEST—ISSUES—STATUTE.

General replication to grounds of contest of probate of will filed in probate court under Code 1907, § 6196, on part of proponent, would have put in issue controverted grounds of objection to probate under section 5331.

3. WILLS ⬅384—CONTEST—HARMLESS ERROR—PLEADINGS.

On appeal from probate court in will contest, Supreme Court will not reverse for any error in manner of making up issues in probate court; unnecessarily prolix character of grounds of contest filed not being calculated to affect hearing and judgment on proper issues.

4. EVIDENCE ⬅472(8), 474(4) — OPINION — TESTAMENTARY CAPACITY.

On will contest, probate judge of county who had known testator for 25 years, and who, with another, had witnessed will, was improperly allowed to testify testator had testamentary capacity, which was one of the issues being tried, though, under exception to general rule, he was properly allowed to state he was of sound mind.

5. EVIDENCE ⬅317(1)—CONTEST OF WILL—HEARSAY—CONVERSATION.

On will contest, testimony of proponent's witness, probate judge of county and a witness to the will, that proponent told witness testator was at his house sick and desired witness to go there and write his will, with part of message delivered by proponent to witness, held competent and not inadmissible as hearsay; witness' reply of readiness to comply with testator's request being also competent.

**6. WILLS ⟨key⟩164(5)—CONTEST—EVIDENCE—UN-DUE INFLUENCE.**

On contest of will, conversation between subscribing witness, probate judge of county, and proponent, testified to by judge as witness, *held* material evidence under specification charging undue influence was exercised by proponent.

**7. EVIDENCE ⟨key⟩472(1)—OPINION OR CONCLUSION—UNDUE INFLUENCE.**

On contest of will for undue influence, it was error to permit subscribing witness, probate judge, called by proponent, to testify he did not see any inclination on part of any one to induce testator to sign; this being an issue for the jury.

**8. EVIDENCE ⟨key⟩501(3)—OPINION—SANITY.**

On contest of will for undue influence, qualified witness was properly allowed to testify, basing his opinion on his knowledge and information, and on conversations with testator, which he had detailed, that testator was insane.

**9. EVIDENCE ⟨key⟩553(1)—OPINION—HYPOTHETICAL QUESTION.**

On contest of will, trial court, exercising sound discretion as to frame and substance of hypothetical question, which referred in part for its facts to preceding like question by adverse party to medical witness, properly allowed it to be asked and answered.

**10. EVIDENCE ⟨key⟩472(1)—CONCLUSION OF WITNESS—UNDUE INFLUENCE.**

On contest of will for undue influence, answers of witness that he did not think proponent was so domineering that he would do a dishonest thing to get a dying man to make a will to him, etc., *held* inadmissible as in effect having witness decide material issues for jury.

**11. EVIDENCE ⟨key⟩155(6) — SIMILAR EVIDENCE.**

Where contestants of will had opened door for evidence as to whether proponent was of such domineering mind as to be likely to take advantage of dying man, by eliciting conclusion of witness on that point, proponent was not improperly permitted to reply with like evidence.

**12. WILLS ⟨key⟩164(7)—CONTEST — UNDUE INFLUENCE—EVIDENCE.**

On contest of will for undue influence, testator's brother gave evidence testator had been at his home before will was executed, and had been troubled about his liability on bond of sheriff executed 25 years before, because proponent told him other persons were trying to get his land on account of it. *Held,* that testimony was competent, in connection with other evidence, as tending to show interest or activity on part of proponent in execution of will.

**13. EVIDENCE ⟨key⟩117—EVIDENCE INADMISSIBLE UNLESS ACCOMPANIED BY OTHER EVIDENCE.**

On contest of will for undue influence, admission in evidence for proponent of certain bond and other proceedings in case of a decedent's estate, testator having signed petition, judgment, and guardian's bond, *held* erroneous, in absence of contestants' prior evidence as to sheriff's bond signed by testator many years before.

**14. TRIAL ⟨key⟩244(2)—INSTRUCTION—SINGLING OUT AND EMPHASIZING EVIDENCE.**

On contest of will for undue influence, trial court properly refused to instruct jury that they might look to particular facts stated; party having no right to single out and give undue emphasis to parts of evidence.

**15. TRIAL ⟨key⟩244(2) — INSTRUCTION — DIRECTION TO CONSIDER EVIDENCE.**

On contest of will for undue influence, charge that in determining whether there was undue influence exercised by proponent "the jury will consider" from the evidence the physical and mental condition of testator, etc., *held* properly refused on account of the quoted clause.

**16. TRIAL ⟨key⟩260(1)—INSTRUCTIONS—REPETITION.**

Charges covered by given charges were properly refused.

**17. WILLS ⟨key⟩332—CONTEST—INSTRUCTIONS—UNDUE INFLUENCE.**

On contest of will for undue influence, charge that whether testator's free agency was destroyed, mastered by physical force or mental coercion, or by threats or importunity, was immaterial, etc., should have been given.

**18. WILLS ⟨key⟩332 — CONTEST—INSTRUCTION—UNDUE INFLUENCE.**

On contest of will for undue influence, charge that if testator is given false impression concerning persons who are natural objects of his bounty, so that in making his will he acts upon unfounded beliefs, etc., not being in position to judge for himself, will is invalid from undue influence, should have been given.

**19. WILLS ⟨key⟩166(1) — CONTEST — UNDUE INFLUENCE—PROOF.**

Contestants of will on ground of undue influence had only to make proof of undue influence to the reasonable satisfaction of the jury, not to their satisfaction.

**20. WILLS ⟨key⟩332—CONTEST—UNDUE INFLUENCE—INSTRUCTIONS.**

On contest of will for undue influence, charges that testamentary capacity does not imply mind wholly unimpaired, that undue influence to defeat will must amount to coercion and fraud destroying free agency, and that influence must be proved to be undue, *held* improperly given.

### On Rehearing.

**21. TRIAL ⟨key⟩96 — OBJECTION TO EVIDENCE COMPETENT IN PART—UNLIMITED MOTION TO EXCLUDE.**

Where motion to exclude witness' answer was not limited to objectionable part, action of trial court in overruling motion to exclude whole answer, part of which was competent, was not erroneous.

**22. WILLS ⟨key⟩384—PREJUDICIAL ERROR—EVIDENCE.**

On contest of will for undue influence, refusal to allow contestants to show by testator's brother testator's apprehension of liability on old sheriff's bond, and that such apprehension

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was superinduced by statements made to testator by proponent charged to have influenced him unduly, *held* error prejudicial to contestants.

McClellan, J., dissenting in part.

Appeal from Probate Court, Barbour County; B. T. Roberts, Judge.

Proceedings for probate of the will of Tom Whittington, propounded by Olin Whittington, and contested by Savannah Miller and others. From judgment admitting the will to probate, the contestants appeal. Reversed and remanded.

Exceptions to evidence sufficiently appear from the opinion.

The charges referred to in the opinion are as follows:

Those refused to the contestants:

(4) If the jury believe from the evidence that the deceased, at the time of making the will, was an aged man, and had a weak mind and memory, and was afflicted with Bright's disease and hardening of the arteries, then they may look to these facts, along with all the other evidence in the case, to determine whether or not he was unduly influenced in signing his will.

(6) It is permissible to inquire whether the provisions of the alleged will as shown by the evidence are just and reasonable, and as bearing on this question the jury may look to the proof of the value of the estate, the pecuniary condition and situation of the contestants, or some or all of them.

(9) If the jury believe from the evidence that, at the time of the execution of the alleged will, T. M. Whittington was an aged man, infirm in body and mind, being afflicted with Bright's disease and hardening of the arteries, which would or did affect his mind, or will powers, you may look to these facts, if they be facts, in connection with all the other evidence in this case, to determine whether or not he was susceptible of undue influence, to determine whether or not the alleged will was the product or result of such undue influence, if any was exerted over him.

(11) The fact that these contestants are heirs at law and nearest of kin to T. M. Whittington, and that Olin Whittington was not an heir at law, and that T. M. Whittington did not give them relatively but very little property by said will, although they were nearer of kin, may be considered by the jury, along with all the other evidence in this case, to determine whether or not said alleged will was his free and voluntary act or deed, or was the product of undue influence.

(20) I charge you that if you believe from the evidence that Olin Whittington was not only active in procuring the draft of the alleged will, but was active in procuring or assisting in procuring Mr. Grubbs and Mr. Cox to witness it, then you may look to these facts to determine whether or not said Olin Whittington exercised undue influence over Mr. T. M. Whittington, the testator, in and about the execution of the will.

(5) In determining whether there was undue influence exercised by Olin Whittington, upon or over T. M. Whittington, the jury will consider from the evidence the physical and mental condition of T. M. Whittington at and prior to the time of the execution of the alleged will, and the relative position and confidential relation between the parties, if any existed, and the motive of said Olin Whittington, as deducible from interest, and also the natural or unnatural disposition of the property as shown by the evidence.

(C) Whether the free agency of the testator is destroyed or mastered by physical force or mental coercion, by threats which occasion fear, or by importunity which the testator is too weak to resist, or which extorts compliance in the hope of peace, is immaterial. In considering the question, therefore, it is essential to ascertain, as far as practicable, the power of coercion upon the one hand, and the liability to its influence on the other. And whenever through weakness, ignorance, dependence, or implicit reliance of one on the good faith of another, the latter obtains an ascendancy which prevents the former from exercising an unbiased judgment, undue influence exists.

(D) If a testator is given a false impression concerning persons who are the natural objects of his bounty, so that when he comes to make his will he acts upon unfounded beliefs and gives or withholds his bounty in a manner entirely different from what his action would have been had it not been based on false beliefs and opinions deliberately instilled into his mind for the purpose of influencing his will—and if in such a case the testator is not in a position, from any cause, as sickness, age, debility, concealment of the true facts, or other reason, to judge for himself and to deliberate or resist the influences, and the will is the result of them, it is invalid from undue influence.

Charges given for the proponent, also:

(O) Even undue influence cannot of itself defeat or vitiate a will when offered for probate, unless the evidence proves to the satisfaction of the jury the two following points: First, that the influence was in fact exercised; and, second, that this influence by its exercise was effectual in producing the peculiar will offered for probate.

(A) The court charges the jury that, in order to set aside the will of a person of sound mind for having been obtained by undue influence, it is not sufficient to show that the circumstances attending its execution are consistent with the hypothesis of its having been obtained by undue influence, but must be shown that they were inconsistent with a contrary hypothesis, and the undue influence must be exercised in relation to the will itself.

(B) The court charges the jury that testamentary capacity does not imply a mind wholly unimpaired; and undue influence, to defeat a will, must overpower the will of the testator, must amount to coercion or fraud, and must be tantamount to force or fear, and thus destroy the free agency of the testator.

(N) The influence which, of itself, will vitiate or defeat a will, must be proved to be undue. Such undue influence is defined as that which compels the testator to do that which is against his will, from fear, the desire of peace, or some feeling which he is unable to resist, and which is tantamount to force or fear.

A. H. Merrill & Sons and McDowell & McDowell, all of Eufaula, for appellants.

George W. Peach, of Clayton, and Jones, Thomas & Fields, of Montgomery, for appellee.

THOMAS, J. The contest of the probate of the will was decided in favor of proponents.

The grounds of contest were: (1) That the writing, purporting to be the last will and testament of T. M. Whittington, deceased, was not duly executed; (2) that at the time of its execution said Whittington was without testamentary capacity; and (3) that at said time said Whittington was under the domination and control of the proponent, Olin Whittington, and the will was the result of undue influence.

The statute fixing the procedure for such a contest provides that—

"A will, before the probate thereof, may be contested by any person interested therein, or by any person who, if the testator had died intestate, would have been an heir or distributee of his estate, by filing in the court where it is offered for probate allegations in writing that the will was not duly executed, or of the unsoundness of mind of the testator, or by any other valid objections thereto; and thereupon an issue must be made up, under the direction of the court, between the person making the application, as plaintiff, and the person contesting the validity of the will, as defendant; and such issue must, on application of either party, be tried by a jury." Code, § 6196.

[1] The statute is silent as to how the issue shall be made up. If the contest was by a bill in chancery, the proponent would file an answer admitting or denying the material allegations of the contest. Code, §§ 6207, 6209; Stephens v. Richardson, 189 Ala. 360, 66 South. 497; Ex parte Colvert, 188 Ala. 650, 654, 65 South. 964. By analogy it would appear that the proponent may, by permission of the court, specifically set out the issues of fact to be tried, by way of replication to a contest filed in the probate court. If such proceedings are prolix, redundant, unnecessary, or improper, the parts thereof transcending the rules of pleading should be stricken on motion. Barnett v. Freeman, 197 Ala. 142, 72 South. 395.

[2, 3] The grounds of contest comprised eleven sections, some of them averring the specific facts on which they rested. This pleading was unnecessarily prolix, and parts thereof could have been stricken on motion; yet it was the issue between the parties, on which the contest was tried, made up under the direction of the court, making the proponent the plaintiff and the contestants the defendants. A general replication thereto on the part of proponent would have put in issue the controverted grounds of objection to the probate. Code, § 5331. However, we will not reverse for the rulings of the trial court made thereon. If there was error in the manner of the making up of this issue, it was not calculated to affect the hearing and the judgment on the proper issues. Barker v. Bell, 49 Ala. 284; 40 Cyc. 1270.

[4] As a witness for proponent, Judge Grubbs had testified that he lived at or near Clayton and the alleged testator lived at Mt. Andrew, and that he had known him for about 25 years. The paper shown witness was identified as that executed by the testator in the presence of witness and of a Mr. Cox, witness testifying that they each signed it in the presence of the other, as the last will and testament of T. M. Whittington, deceased. Proponent then asked witness, "What would you say as to his mental condition?" and the answer was:

"He was of sound mind. He was all right mentally; that is, he had testamentary capacity."

Due objection was made to the question; and exception reserved to the ruling of the court permitting the same, together with motion to exclude the answer, was overruled by the court. One of the issues being tried was the "testamentary capacity" of T. M. Whittington. Where there has been a long and intimate acquaintance with another, furnishing opportunity for the formation of correct judgment as to the mental condition of such person, a witness may give his opinion that the person "is of sound mind," since sanity is the normal condition of mankind. The general rule would not permit this witness, though an attesting witness to the purported will, to testify that the party executing the will had testamentary capacity at the time of its execution. The reason on which the rule is rested is that such issue of fact must be submitted to the judge or the jury trying the same, that they may draw the inference.

In Councill v. Mayhew, 172 Ala. 295, 306, 55 South. 314, 317, Mr. Justice Somerville states the rule as follows:

"It is well settled that, on the issue as to testamentary capacity, a witness, whether expert or not, cannot testify that the testator was or was not capable of making a will, because, as it is said, this is the very issue to be submitted to the jury. Walker v. Walker, 34 Ala. 469, 473; Hall v. Perry, 87 Me. 569, 33 Atl. 160, 47 Am. St. Rep. 352; 28 A. & E. Ency. Law, 102. * * * The only exception to the rule stated is on the cross-examination of a witness who has testified as to the sanity or insanity of the testator, and then only to test the witness, and not to thus establish the fact. Dominick v. Randolph, 124 Ala. 557, 564, 27 South. 481." Torrey v. Burney, 113 Ala. 496, 21 South. 348; 2 Jones on Ev. §§ 365, 367.

That this ruling of the trial court constituted reversible error we are without doubt. The evidence showed that, at the time of the preparation and execution of the paper in question Judge Grubbs was the probate judge

of the county in which the contest was being tried by a jury; that he carried the paper back to the county seat with him and placed it in the iron safe in the probate office with other probated wills. It is true that a part of the witness' answer as an attesting witness to the will, to the effect that at the time of the execution of the instrument the alleged testator was of sound mind, was competent under the recognized exception to the rule. McCurry v. Hooper, 12 Ala. 823, 828, 46 Am. Dec. 280; Shirley v. Ezell, 180 Ala. 352, 361, 60 South. 905; Walker v. Walker, 34 Ala. 469; Williams v. Spencer, 150 Mass. 346, 23 N. E. 105, 5 L. R. A. 790, 15 Am. St. Rep. 206; 3 Wigmore on Ev. § 1936; 2 Jones on Ev. § 365 (367); 14 Ency. Ev. p. 388. The answer, however, did not stop there, but drew the conclusion of fact that only the jury or the judge trying the facts may draw.

[5, 6] It was competent for proponent to show that Olin Whittington told Judge Grubbs that T. M. Whittington was at his house, sick, and desired Grubbs to go there and write his will. It was not hearsay evidence for the witness to say, "Tom (T. M. Whittington) wanted to know first if I would be willing to come and, if so, he would send me word when he wanted me to go," for when this statement is considered in its context, with what witness was told by Olin Whittington, it amounted to no more than a part of the message delivered by Olin to witness and represented to have been a part of the message sent by T. M. Whittington. It was also competent for the witness to state his reply of readiness to comply with the request. This conversation between Judge Grubbs and Olin was further material, under the specification charging that undue influence was exercised by Olin over the testator, that resulted in the execution of the will; it tended to show a part taken by Olin in its preparation or procurement, and had a material bearing as affecting the burden of proof on the issue of undue influence. McElhaney v. Jones, 197 Ala. 303, 312, 313, 72 South. 531; Bancroft v. Otis, 91 Ala. 279, 286, 8 South. 286, 24 Am. St. Rep. 904; Coghill v. Kennedy, 119 Ala. 641, 666, 24 South. 459.

[7] It was prejudicial error to permit Judge Grubbs, in response to the question, "Did you see any inclination or effort on the part of any one to induce Tom Whittington to sign the paper?" to answer, "I did not." This was one of the issues submitted to the jury. The question and answer improperly permitted the witness to state a conclusion drawn by him from the circumstances and facts attendant on the execution of the paper. Whether or not there was an effort on the part of any one that resulted in the execution of the paper, amounting to the exertion of undue influence as defined by the law of such cases, was an inference of fact to be drawn from the whole evidence. The witness should have been asked to state the facts, and not to draw a conclusion from the facts.

[8] The witness W. N. Whittington, having qualified, was properly allowed to testify —basing his opinion on his knowledge and information and on conversations with T. M. Whittington, which he had detailed to the jury—that the testator was insane.

[9] The assignment of error presenting for review the ruling of the court permitting the proponent to ask witness Dr. Britt the hypothetical question set out at length in the transcript is not well founded. In Burnwell Coal Co. v. Setzer, 191 Ala. 398, 67 South. 604, and Pullman Co. v. Meyer, 195 Ala. 397, 70 South. 763, the rule prevailing in this state for propounding hypothetical questions is stated. In effect, it is that such questions need not hypothesize every fact in evidence, but may incorporate only sufficient facts in evidence to fairly justify the formulation of an opinion on the material issue on which the testimony is offered. The frame and substance of the question is a matter largely committed to the sound discretion of the trial court. Such a question is held objectionable if it contains elements of fact not shown by the evidence. B. R. & E. Co. v. Butler, 135 Ala. 388, 395, 33 South. 33; Morrissett v. Wood, 123 Ala. 385, 26 South. 307, 82 Am. St. Rep. 127; Parrish's Case, 139 Ala. 16, 36 South. 1012; Long Distance Co. v. Schmidt, 157 Ala. 391, 47 South. 731; B. R. L. & P. Co. v. Saxon, 179 Ala. 136, 59 South. 584; Jones on Ev. §§ 370, 371; 17 Cyc. pp. 244, 250. Dr. Britt, as a witness, had theretofore answered a question propounded by contestants' counsel, assuming as true the matters of evidence on which an adverse judgment of the alleged testator's sanity might be based; and had answered that from such facts he would say that, "He was mentally insane, etc." Thereupon, on cross-examination, he was asked this question:

"Mr. Merrill [one of contestants' counsel] propounded to you awhile ago a hypothetical question in which he assumed the existence of a certain condition of a patient which he described to you; and he asked you if you thought such a patient of sound or unsound mind. You answered that you thought he was of unsound mind. Now, I will ask you a question, assuming the existence of all those conditions and hallucinations, as recited in the hypothetical question propounded to you by Mr. Merrill, and further assuming, etc. [reciting the facts and circumstances of the situation and condition of the alleged testator just before, and at the time of the execution of the paper, as shown by the evidence], do you think he was of sound or unsound mind?"

The witness answered, "I think his mind was sound." The court, exercising a sound discretion as to the frame and substance of this hypothetical question, committed no error in allowing it to be asked and answered.

[10, 11] The witness, Mr. Pruett, called by

the proponent, was asked on direct examination:

"Do you think that Olin Whitfington is of such a domineering mind that he would do a dishonest thing to get a dying man to make a will to him?"

"Do you think he is of such a domineering mind that he would take advantage of a dying man, an old man on his deathbed, and by some undue influence, and some unlawful means, force him to execute a will in his favor?"

To each of these questions the witness' answer was, "No, sir." These questions and answers were in effect to have the witness to decide material issues presented by the pleadings and the evidence, and for this reason they were an invasion of the province of the jury. Councill v. Mayhew, 172 Ala. 295, 304, 305, 55 South. 314. However, the contestants had opened the door for such illegal evidence, by the question, "Don't you think that Olin Whittington's mind is so domineering and to such an extent that he would try to shape another man's mind to such a course that it would be to his own interest?" with the answer, "Yes, sir." The proponent was not improperly permitted to reply with like evidence. Gibson v. Gaines, 198 Ala. 583, 73 South. 929.

[12] Contestants had introduced W. N. (Paul) Whittington as a witness, who had testified to the failing physical condition of his brother (the testator), and to the fact of the latter's being at witness' home about five weeks before the will was executed, at which time he appeared to be troubled about the fact of having "gone on a bond, and it looked like it was coming back to him." Witness was then asked, "What bond did he say it was?" Objection interposed to the question was sustained. Contestants' counsel stated the purpose of the testimony was to prove that the testator, Tom Whittington, came to witness about two months prior and told him that he wanted to sell out his land; that the witness asked the testator why he wanted to sell out his land, and the testator replied that Olin Whittington told him that he was on John Lasseter's bond as sheriff, and that they were going to try to get his land; that he had been getting rid of his lands. Upon objection by proponent, the court refused to allow contestants to make such proof, and due exception was reserved. It was then stated that counsel expected this witness to testify that no efforts had been made to get the testator's land; that at the time testator appeared to be worried; that Lasseter was sheriff 27 years ago; and that no effort had been made to fasten any liability on testator's lands.

[13] The testimony was competent, in connection with other evidence, as tending to show interest or activity on the part of Olin Whittington in and toward the procurement and execution of the will. Coghill v. Kenne-

dy, 119 Ala. 641, 659, 24 South. 459. The objection and exception not being insisted upon in argument of counsel, we have referred to the ruling thereon in its connection with the subsequent testimony which the court permitted proponent to introduce over contestants' objection—the petition, judgment, and guardian's bond signed by the testator and others in the matter of the estate of Jessie Bennett, a non compos mentis. This latter testimony, in the absence of the testimony sought to be elicited from Paul Whittington, was not in rebuttal of testimony introduced, and did not shed light upon the issue being tried. There was error in the admission of the bond and other proceedings in the Jessie Bennett case, over the objection and exception of contestants and in absence of Paul Whittington's proposed evidence as to the Lasseter bond as sheriff made years ago.

[14] It was not error to refuse to instruct the jury that they may look to the facts stated; a party has no right to single out and give undue emphasis to parts of the evidence by this method.

There was no error in refusing contestants' charges 4, 6, 9, 11, and 20. Bancroft v. Otis, 91 Ala. 279, 280, 291, 8 South. 286, 24 Am. St. Rep. 904; Councill v. Mayhew, 172 Ala. 295, 313, 55 South. 314.

[15-18] The refusal of charge 5 may be justified, because of the use, in the charge, of the expression, "the jury will consider." Charge 16 was properly refused; however, this instruction found substantial expression in given charge 15. Charge 17 could have been given without reversible error; it was covered by given charges. Phillips v. Gaither, 191 Ala. 87, 67 South. 1001; Councill v. Mayhew, supra; Coghill v. Kennedy, supra; 2 Pom. Eq. Jur. 951. Charge C, refused to the defendant, should have been given. It is a copy of charge H, the giving of which was held not to be error in Coghill v. Kennedy, supra, 119 Ala. 646, 666, 24 South. 459. Likewise, refused charge D is a copy of charge K, held proper in the Coghill Case.

[19] Given charge for proponent (which we designate "O") exacts too high a degree of proof. The law requires that such proof should be to the reasonable satisfaction of the jury, and not as in this charge stated. Torrey v. Burney, 113 Ala. 496, 504, 21 South. 348; Prince v. State, 100 Ala. 146, 14 South. 409, 46 Am. St. Rep. 28; Rowe v. Baber, 93 Ala. 422, 425;[1] Vandeventer v. Ford, 60 Ala. 610, 615; Coghill v. Kennedy, supra, 119 Ala. 667, 24 South. 459; Phillips v. Gaither, supra; Reaves v. Maybank, 193 Ala. 614, 69 South. 137. Charge A was substantially the same as charge 18, given in Knox v. Knox, 95 Ala. 495, 501, 11 South. 125, 36 Am. St. Rep. 235.

[20] The true rule of undue influence, as later stated in Councill v. Mayhew, and Phillips v. Gaither, condemns given charges B and N.

[1] 8 South. 865.

We are not unmindful of the fact that these charges, seeking to instruct as to undue influence, were approved as charge 3 in Knox v. Knox, 95 Ala. 495, 504, 11 South. 125, 36 Am. St. Rep. 235.

The decree of the probate court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

### On Rehearing.

THOMAS, J. [21] 1. In response to the application for rehearing, our attention is called to the fact that the motion to exclude Judge Grubb's answer was not limited to the objectionable part—that testator had "testamentary capacity" when he executed the will. For this reason there was no error in overruling contestants' motion to exclude the whole answer of the witness.

[22] 2. There was prejudicial error in refusing to allow the contestants to show by witness Mr. Paul Whittington testator's apprehension of liability on an old sheriff's bond and that this apprehension was superinduced by statements made to testator by Mr. Olin Whittington. In effect, this was the showing made to the court by contestants' counsel of what was expected to be shown by the witness. This erroneous ruling was not eradicated by the later introduction by proponent of testimony tending to show testator's fear of liability on a more recent guardian's bond. Under the issues formed, contestants should have been permitted to introduce the evidence in question in the orderly conduct of the trial and introduction of their evidence, and not have evidence by proponent of testator's apprehension of liability under a later guardian's bond rather than the old sheriff's bond in question. If it was competent for proponent to show testator's liability on a recent bond, or his apprehension of such liability, it was likewise important that contestants be permitted to show that such apprehension was of an ancient liability, and, as stated to the court by contestants' counsel, they expected also to show that this apprehension was stirred in the mind of testator by statements made to him by Mr. Olin Whittington.

3. Of proponent's given charges B and N,

Justices MAYFIELD and SAYRE agree with the writer that the same should be refused in a case where the issues of fact are undue influence and fraud. The rule of undue influence and fraud—that vitiating coercion or fraud if entering into the procurement or execution of a testamentary instrument—that defeats its probate, was recently elucidated in Higginbotham v. Higginbotham, 106 Ala. 314, 318, 17 South. 516; Councill v. Mayhew, 172 Ala. 295, 55 South. 314; Phillips v. Gaither, 191 Ala. 87, 67 South. 1001. We believe these cases, in effect, modified the upholding of given charge 3 in Knox v. Knox, 95 Ala. 495, 504, 11 South. 125, 36 Am. St. Rep. 235. This view is concurred in by the CHIEF JUSTICE and Justices SOMERVILLE and GARDNER. The vice of the statement of law contained in instant charge B is not that it is merely misleading, but that its modifying words "and must be tantamount to force or fear," immediately succeeding the words "must amount to coercion or fraud," rendered the instruction positively erroneous. Mr. Justice SOMERVILLE will state his view of charge B for the CHIEF JUSTICE and Mr. Justice GARDNER. Mr. Justice McCLELLAN dissents as to the rulings on charges as indicated by him. In other respects the Justices concur.

Application for rehearing overruled.

SOMERVILLE, J. In considering the propriety of such charges as B and N, and similar charges discussed and criticized in the case of Councill v. Mayhew, 172 Ala. 295, 55 South. 314, it is always necessary to keep in mind the particular phase or phases of undue influence presented by the evidence to which the charge is to be applied.

Where there is no issue in the evidence of actual fraud by deceit, nor of constructive fraud to be implied from confidential relations, such charges may not be erroneous, nor even misleading. Such was no doubt the case in Knox v. Knox, 95 Ala. 495, 11 South. 125, 36 Am. St. Rep. 235, and also in the several cases referred to in 172 Ala. 309, 55 South. 314.

But in the instant case both of these issues are made by the evidence, and for this reason I concur in the opinion of Mr. Justice THOMAS holding that charges B and N were both misleading and erroneous in this case.