WALKER *vs.* WALKER'S EXECUTOR.

[CONTESTED PROBATE OF WILL.]

1. *Opinion of witness on question of sanity.*—A subscribing witness to a will may give his opinion as to the mental condition of the testator at the time of its execution.

2. *Competency of witness as affected by interest.*—The husband of a female distributee is not a competent witness against the validity of a will propounded for probate, when it is shown that, if the will were set aside, his wife would be entitled to a greater share of the estate, than if it were held valid.

3. *When motion to suppress deposition may or must be made.*—It may admit of question whether a party may not at any time move to suppress a portion of a deposition, on account of objections which go to the substance of the evidence, unless his failure to object to the interrogatory, to which it is responsive, is a waiver of the objection.

4. *To what witness may testify.*—A witness cannot, even though he be a physician, be allowed to testify that the testator "had sufficient capacity to make a will."

5. *General objection to evidence.*—A general objection to evidence, of which a portion is legal, may be overruled entirely.

APPEAL from the Probate Court of Dallas.

IN the matter of the last will and testament of Joseph K. Walker, deceased, which was propounded for probate by William W. Hardy, the executor therein named, and contested by Thomas Walker, who was a brother and heir-at-law of the testator, on the grounds of fraud, undue influence, insufficient attestation and execution, and mental incapacity on the part of the testator. On the trial of these issues, as appears from the bill of exceptions, the proponent introduced one Hugh R. Wilson as a witness, who was one of the subscribing witnesses to the will, and who testified as follows: "That he was the uncle, by marriage, of the decedent's wife; that since the decedent's marriage, which occurred about two years ago, he had seen him several times, and had stayed all night with him at the house of his father-in-law, and had conversed with him on such occasions; that he had met him occasionally at church, and knew him before his marriage, though his acquaintance was only such as he had with

other young men in the neighborhood. The witness did not say that he knew the decedent intimately, at any time; but he did say that he had known him since he was a small boy. Upon this predicate, the proponent's counsel asked said witness, whether, in his opinion, said decedent was of sound mind when he signed said will; to which the witness answered, that, in his opinion, the decedent was of sound mind at that time." To this question and answer, each, the contestant objected, and reserved exceptions to the overruling of his objections.

The contestant offered one Wiley as a witness, who was the husband of one of the decedent's sisters. "It was admitted, that the decedent died without any child; that the wife of said Wiley was still living, and was a distributee of said decedent's estate; and that, if the said will were set aside, she would receive a greater amount than if it were admitted to probate." On these facts, the proponent objected to the competency of the witness, and the court sustained his objection; to which the contestant excepted.

The proponent offered in evidence the deposition of Dr. Kenneth McKennon, which "was not brought into court by the commissioner, or published, until after the trial was commenced; and it was then opened, on the consent of the proponent's counsel that the contestant might make any objection to the same, when offered, which he could have made before the trial was gone into, if the deposition had then been in court and opened." The 4th interrogatory to this witness, and the answer thereto, were in the following words: "*Int.* 4. If you answer that you visited him [decedent] during the month of March, 1858, then state fully and particularly what was the condition of his mind during that month. Were his conduct and behavior that of a reasonable and sensible man, or the reverse? Did he, or not, have sufficient capacity to transact the ordinary business of life in a sensible manner? Did he, or not, during said month, have sufficient capacity to make contracts or bargains in a reasonable and sensible manner? Was he, during that month, a man of sense, or was he a fool? If you saw him

on the 4th, 5th and 6th days of March, 1858, state particularly the condition of his mind at that time. Was he, in your opinion, of sufficient mental capacity to make a contract, or a will, and to know and understand what he was doing? State any facts or circumstances on which you found your opinion. What did he do? What were the nature and character of his conversation during that time? Did you see him transact any kind of business, and what? If so, in what manner did he do it? was it done sensibly or foolishly?" *Ans.* "He seemed as usual: I saw no difference in him. He spoke rationally: I saw no signs of imbecility or aberration of mind. *His conduct was that of a reasonable and sensible man. He had sufficient capacity to transact business in a sensible manner. He had sense enough to make contracts. He was a man of sense, and not a fool.* I saw him on the times inquired of. *He was capable of making a contract, and of understanding it.* I conversed with him in relation to his condition. He spoke rationally and sensibly. He spoke only in reference to his physical condition. I never saw him transact any business." To each of the italicized portions of this answer the contestant objected, "on the ground that the evidence so offered was illegal and irrelevant," and reserved exceptions to the overruling of his objections.

The contestant also objected to the entire answer of this witness to the 6th interrogatory, which answer was in these words: "He was of sufficient mind, at any of the times when I saw him, to make a will, and to understand what he was doing." The court overruled the objection, and the contestant excepted.

The assignments of error cover all the rulings of the court, to which exceptions were reserved.

Byrd & Morgan, for the appellant.

Pettus, Pegues & Dawson, *contra.*

STONE, J.—The probate court committed no error, in permitting the subscribing witness, Wilson, to testify to his opinion of the sanity of the testator.—Roberts v. Trawick, 13 Ala. 84; Stubbs v. Houston, 33 Ala. 555;

1 Greenl. Ev. § 440, and notes; 1 Jar. on Wills, 74–5–6; Hughes v. Hughes, 31 Ala. 519.

[2.] Neither did the court err in excluding the witness Wilson as incompetent to testify in this controversy. Wilson v. Sheppard, 28 Ala. 623; Harris v. Plant, 31 Ala. 639; Notes to Burt v. Baker, 2 Smith's Leading Cases, pp. 106 to 156; Robinson v. Tipton, 31 Ala. 595; Smith v. Tal. Br. of Plank Road Co:, 30 Ala. 650; Steamer Farmer v. McCraw, 31 Ala. 659.

[3.] Motions were made in the court below to exclude certain portions of Dr. McKennon's testimony; and it is here objected that the motions came too late, because they were not made until after the trial had been entered upon. The exception to the testimony does not go to the form of the inquiry, but to the substance of the evidence. Under these circumstances, it may admit of question, whether the motion to suppress, if the party has not waived his right by failing to object to the interrogatory to which it is responsive, may not be made at any time. McCreary v. Turk, 29 Ala. 244.

There is, however, another and a complete answer to this objection. The bill of exceptions recites, that "said deposition was opened, upon the consent of proponent's counsel that the contestant might make any objection to the same when offered, that he could have made before the trial was gone into."

[4.] Two objections were made to the interrogatories, and subsequently to the answers to them, which may be considered together, as they present substantially but one question. We allude to the last objection to the 4th interrogatory, and the objection to the 6th interrogatory, and the objection to the answers thereto. The 4th interrogatory sought the opinion of the witness, whether the testator had sufficient capacity to make a contract or a will, and to know and understand what he was doing. The 6th interrogatory made the same inquiry in substance, but limited it to testator's capacity to make a will. The witness responded, that testator had sufficient capacity to make a contract and a will.

One of the reasons specified by contestant, why the

will should not be admitted to probate, was, "that said Walker was not, at the date of said paper, or the time of its execution, of sound and disposing mind and memory." It will thus be seen, that the question put to this witness, and answered by him, was the precise question which was presented by one of the issues, to be tried by the jury.

Capacity to make a will is not a simple question of fact. It is a conclusion, which the law draws from certain facts as premises. Hence, it is improper to ask and obtain the opinion of even a physician, as to the capacity of any one to make a will. Under our system, that question· was addressed to the jury. All evidence which tended to shed light on his mental *status*—the clearness and soundness of his intellectual powers—should have gone before them. This being done, however, the witnesses should not have been made to invade the province of the jury.—See 1 Greenl. Ev. § 440, and notes; Campbell v. Rickards, 5 Barn. & Ald. 840; Jeff. Ins. Co. v. Cotheal, 7 Wen. 72, 78-9; Jemison v. Drinkald, 12 Moore, 148; Ramadge v. Ryan, 9 Bing. 333; Stark. Ev. vol. 2, part 2, p. 886; Harrison v. Rowan, 3 Wash. Cir. Ct. 580, 587; Hall v. Goodson, 32 Ala. 277.

We are aware that, in Wogan v. Small, 11 Serg. & R. 141, the precise question we are considering was propounded to a witness—objected to—admitted—and the ruling of the primary court approved in the supreme court of Pennsylvania. The specific and only objection that was made in that case was, that the question was leading. The court considered the question in no other point of view, but held it was not leading. We are not willing to regard this as authority for the admissibility of such evidence.

[6.] The other objections of appellant were, in each case, to a mass of evidence, some portion of which was legal. The court was not bound to grant the motion. Shep. Dig. 596, § 169.

Reversed and remanded.