(85 South. 558)

### CHANDLER v. CHANDLER et al. (7 Div. 60.)

(Supreme Court of Alabama. April 8, 1920.)

1. **Witnesses** ⟸⟹372(2)—**Witness may be required to disclose interest but not to declare how he acquired interest.**

In will contest proponent had the right to have witness for contestants disclose a fact showing his bias or interest but not to declare the extent or sufficiency of the consideration by which he had acquired an interest in the lands formerly belonging to decedent.

2. **Wills** ⟸⟹293(5)—**Discovery of will and administration proceedings prior thereto held competent on issue of forgery.**

In will contest involving the issue of whether proponent, to whom will gave land without limitation, had forged will, evidence as to circumstances attending discovery of will and as to administration proceedings prior thereto in which proponent had been removed as administrator and in which consent decree had been entered into, giving her merely a life estate in such land, held competent.

3. **Wills** ⟸⟹293(5)—**Unsuccessful search for will and subsequent finding thereof admissible on issue of forgery.**

Testimony that proponent had searched decedent's trunk, in which he kept his valuable papers, after his death, without finding will, and that she subsequently requested another person to examine certain papers in a room in her home formerly occupied by decedent's son, at which time the will was found, held admissible on issue of fraud.

4. **Wills** ⟸⟹384—**Opinion evidence as to mental condition of testator discretionary with the court.**

In will contest on ground of mental incapacity, the admission of opinion as to mental condition of testator by witnesses shown to have been familiar with and to have had close acquaintance with testator is discretionary with

---

⟸⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the court, and the exercise of such discretion is not reversible unless plainly erroneous.

**5. Evidence ⬚478(1)—Opinion testimony as to mental condition of testator held not abuse of discretion.**

In will contest on the ground of mental incapacity, action of court in permitting witness who had known testator all his life, and who had been together with testator on day of execution of will, to testify as to testator's mental condition on such day, *held* not an abuse of such discretion.

**6. Wills ⬚294—Extrajudicial declarations by subscribing witness since deceased as to capacity not admissible.**

If the subscribing witness is dead or permanently absent from the jurisdiction, neither party can give in evidence extrajudicial declarations or opinions which such subscribing witness may have subsequently made regarding testator's mental capacity, for the purpose of invalidating the will.

**7. Wills ⬚294—Declaration of deceased or absent alleged subscribing witness as to forgery admissible.**

Declarations of alleged subscribing witness, who is dead or out of jurisdiction at the time of will contest, that instrument offered for probate but challenged as a forgery was not in fact executed by testator or attested by such declarant, are competent, if supported by other evidence tending to show such fraud or forgery, where the will is supported only by proof of the handwriting of such subscribing deceased witness.

Appeal from Probate Court, Cherokee County; J. L. Savage, Judge.

Petition by Mary J. Chandler for the probate of a will of John A. Chandler. From a decree denying the probate of the will proponent appeals, making the heirs party thereto by virtue of their contest. Affirmed.

Hugh White and A. E. Goodhue, both of Gadsden, for appellant.

The litigation referred to and its irrelevance is apparent. 97 Ala. 639, 11 South. 838; 135 Ala. 227, 33 South. 42; 16 Cyc. 1198. The petition for letters of administration was not admissible; neither was the order granting the letter, nor was the petition for the sale of land, nor the order of court thereof. Authorities supra. The evidence of Waters was not admissible. 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33. The court erred in its ruling on the evidence as to the burden of proving the execution of the will. 108 Ala. 366, 18 South. 831; 127 Ala. 640, 29 South. 98, 85 Am. St. Rep. 145; 135 Ala. 666, 33 South. 1015; 72 Ala. 79; 172 Ala. 295, 55 South. 314; 189 Ala. 366, 66 South. 662. As to testamentary capacity, counsel cite authorities supra, and 119 Ala. 641, 24 South. 459; 189 Ala. 96, 66 South. 717; 174 Ala. 220, 57 South. 450; 95 Ala. 486, 11 South. 204, 36 Am. St. Rep. 227. As to un-

due influence, they cite 157 Ala. 262, 47 South. 584; 180 Ala. 352, 60 South. 905; 176 Ala. 141, 57 South. 820; 174 Ala. 205, 56 South. 949; 184 Ala. 106, 63 South. 524. The question of mental capacity is one for the jury. 34 Ala. 469; 124 Ala. 557, 27 South. 481.

Hugh Reed, of Center, and O. R. Hood, of Gadsden, for appellees.

The testimony objected to in the first and second assignments of error was but completing a transaction partially brought out by proponent. 91 Ala. 69, 9 South. 171; 147 Ala. 5, 41 South. 519; Sup. Ct. Rule 45 (175 Ala. xxi, 61 South. ix). The papers in the former suit were admissible. 130 Ala. 541, 30 South. 389; 129 Ala. 435, 29 South. 558; 57 Ala. 433; 199 Ala. 433, 74 South. 381; 35 Ala. 19; 151 Ala. 597, 44 South. 605; 138 Ala. 69, 34 South. 1009; 97 Ala. 639; 91 Ala. 69, 9 South. 171; 129 Ala. 435, 29 South. 558. Waters had shown sufficient familiarity with the deceased to testify as to his mental capacity. 194 Ala. 285, 69 South. 902; 200 Ala. 345, 76 South. 111; 127 Ala. 640, 29 South. 98, 85 Am. St. Rep. 145. There is no presumption of law as to due execution; it is wholly a question of fact. 127 Ala. 640, 29 South. 98, 85 Am. St. Rep. 145; 179 Ala. 666, 60 South. 289; 40 Cyc. 1302; 28 Mont. 421, 72 Pac. 756, 63 L. R. A. 319.

THOMAS, J. The appeal is taken from a decree denying the probate of an alleged will of John A. Chandler, deceased.

The issues were tried by a jury. On the verdict for contestants, a decree was entered to the effect that the instrument propounded for probate was not the last will of John A. Chandler, deceased, and was not entitled to be probated.

The recited grounds of contest on which the issues were made were the due execution of the instrument, whether its execution was procured by undue influence, whether John A. Chandler, at the time of the execution of said instrument, was of unsound mind and incapable of making a valid will, and whether said instrument was fabricated.

Several of the objections duly made and exceptions reserved to rulings on the introduction of evidence are assigned as error. To an understanding of the same, it should be stated that before the production of the instrument sought to be probated as the last will of said Chandler certain proceedings were had in the probate court, viz. letters of administration on the estate of said Chandler were issued to Mary J. Chandler, the wife, on her application, a petition filed by the administratrix to sell lands of the estate for payment of debts, and an order dismissing that petition. In the chancery court there

was a decree of removal of said administration from the probate court, a decree removing Mary J. Chandler (proponent) as administratrix of said estate, and a consent decree. Among other things, the consent decree adjudged that Mrs. Chandler should have control of the property of the estate, was entitled to all the rents, income, and profits therefrom during her natural life, without accounting except for designated injury to the remainder interest therein; and, further, that she was required to make certain specific annual payments to designated creditor. The sale of certain lands of the estate for the payment of debts was provided, and the contingency of nonpayment of the debts before the death of Mrs. Chandler was likewise provided for. The foregoing instruments were introduced in evidence by contestants over the due objections and exceptions of proponent, and respectively insisted upon as error.

[1] The witness Mr. Reed, having testified in behalf of contestants, under the rule permitting the bias or interest of a witness to be shown (Johnson v. State, 74 South. 366, 367 [1]), on cross-examination was asked, "Has the litigation in which you have represented such heirs been terminated?" and "You are interested in the lands of this estate, are you not?" Proponent had the right to have witness disclose a fact showing bias or interest, if such there was; not to declare the extent or sufficiency of the consideration by which he acquired an interest in the lands formerly belonging to said decedent. Without objection, to the latter question, the witness replied, "Yes; I have a deed to a one-fourth interest in all the real estate of the estate of J. A. Chandler;" and then proceeded to state the further fact that his interest might be affected by the result of the verdict of the jury on the instant trial, "for should the will be proven and the title to the lands pass to the widow under this will, I might thereby be prejudiced, inasmuch as I hold a deed from the heirs at law of J. A. Chandler, and his widow is not his heir. I have my deed here in my hand."

In the proceedings in the probate court by proponent (the widow of decedent), her acts as administratrix of said estate to the time of her removal from representative capacity by the chancery court and thereafter to the time of the consent decree declaring the extent of her interest in the estate as the widow of said decedent to be that of a life estate subject to annual fixed payments to certain creditors of that estate, it must be admitted, are not related to the question of the bona fides of the consideration for the witness Reed's interest in the lands acquired by contract from the next of kin of John A. Chandler, deceased. If not otherwise relevant evidence, the admission of such proceedings in evidence was calculated to confuse the issues being tried and to prejudice the jury

against the proponent of the will and only beneficiary thereunder.

[2] Was this evidence competent on the issue of fraud or forgery vel non of the will in question? The issue of letters testamentary to Mary J. Chandler, the several subsequent proceedings in the probate and chancery courts, the decree of her removal for insufficient bond, and the consent decree making disposition of the properties of said estate, presupposed the nonexistence of a will of John A. Chandler, deceased. After her removal as administratrix and the consent decree limiting her title to the properties of her deceased husband, the will propounded for probate would have rendered nugatory said acts and decrees, defeated the title in remainder with which the next of kin had been invested as the result of the contests, litigations, or negotiations in their behalf fixed and declared in the decree in question. The fact that Mrs. Chandler propounded for probate the alleged will of her deceased husband at such stage of administration and negotiation, with her explanation as to where and by whom it was discovered in her residence, was competent evidence for contestants. It was of slight probative force, it is true, yet was susceptible of the inference by the jury of motive, prejudice, or bias on the part of proponent to effectively defeat the efforts of the next of kin of her deceased husband to establish and fix their interests as remaindermen in the properties of the estate. It is true that such evidence is consistent with good faith on the part of Mrs. Chandler; yet the jury had the right to judge the acts of the parties in the light of their passions, prejudices, bias, and interest. The fact that the attorney, in behalf of the heirs at law of John A. Chandler, deceased, had controverted with Mrs. Chandler as to a sale of the lands to pay debts, or in the requisition for additional bond and for her removal as administratrix, may have produced estranged relations between the parties and furnished a motive for the production of the will. Of this the jury were the judges. The will propounded for probate gave her without limitation the property of deceased, and defeated the claim of said heirs at law, rendering nugatory any interest their counsel may have acquired in the land by reason of his representation of them in contests with Mrs. Chandler. The consent decree had a contrary effect.

[3] Aside from this is the fact that in the sworn petition for letters of administration proponent stated that John A. Chandler left no will or testament so far as she knew or believed. It appeared from Mrs. Chandler's testimony that her husband's valuable papers were kept in a trunk, and she had gone through them after his death, but found no will; that later she requested another to examine certain papers in the room (in her home) formerly occupied by the deceased's son, when and where the will was found. On

---

[1] 199 Ala. 255.

the issue of fraud, such evidence was for the jury to draw the inference of good faith and honesty of purpose, or otherwise, as it, considered with all the other evidence, was warranted as a reasonable inference and to their reasonable satisfaction.

Contestants were permitted to ask witness Watters, "What was your judgment as to his mental condition on that day, November 15, 1911?" meaning the alleged testator on the date on which the will purported to have been executed, and the reply was: "I think his mind was not right." The witness had testified on direct examination that he had known Mr. Chandler all his life; "saw him in September, 1911, after the death of his son; * * * he never seemed right after his son's death;" was at his home one day and he "seemed to be lost; his wife took him out of the house and walked him some and he seemed better." On returning, "asked me how I came to be there," though witness had seen him before he went to walk. That this was about two months after the death of his son. On cross-examination the witness had stated that—

He "did not observe anything especially peculiar about Mr. J. A. Chandler after his son's death except he seemed to be sad always, and the time I mentioned, about a month or more before his death, when he didn't know where he was and wanted to go home, and when he started anywhere he would go in the opposite direction to that in which he seemed to intend to go. In my judgment, his mind was not sound at that time which was a month or more before his death. About all I observed of him on November 15, 1911, when we were at Mrs. Net Chandler's, at the time the testimony was being taken, was that he simply walked around or sat around, looking sad, and did not seem to observe anything much that was going on. I couldn't state anything more as to Mr. Chandler's mental condition on that day, November 15, 1911, than as to any other time after his son's death."

Thereupon contestants propounded the foregoing question, and he was permitted by the court, in the exercise of a sound judicial discretion, to answer against proponent's due objection and exception.

One of the issues of the contest was the testamentary capacity of Mr. Chandler on November 15, 1911. The rule governing a nonexpert witness in expressing an opinion as to the sanity or insanity of one whose sanity is an issue of the trial has often been discussed by this court. In Miller v. Whittington, 202 Ala. 406, 409, 80 South. 499, 502, this court recently said:

"Where there has been a long and intimate acquaintance with another, furnishing opportunity for the formation of correct judgment as to the mental condition of such person, a witness may give his opinion that the person 'is of sound mind,' since sanity is the normal condition of mankind. The general rule would not permit this witness, though an attesting witness to the purported will, to testify that the party executing the will had testamentary capacity at the time of its execution. The reason on which the rule is rested is that such issue of fact must be submitted to the judge or the jury trying the same, that they may draw the inference."

In Councill v. Mayhew, 172 Ala. 295, 306, 55 South. 314, 317, the rule is stated as follows:

"It is well settled that, on the issue as to testamentary capacity, a witness, whether expert or not, cannot testify that the testator was or was not capable of making a will, because, as it is said, this is the very issue to be submitted to the jury. Walker v. Walker, 34 Ala. 469, 473; Hall v. Perry, 87 Me. 569, 33 Atl. 160, 47 Am. St. Rep. 352; 28 A. & E. Ency. Law, 102. * * * The only exception to the rule stated is on the cross-examination of a witness who has testified as to the sanity or insanity of the testator, and then only to test the witness, and not to thus establish the fact. Dominick v. Randolph, 124 Ala. 557, 564, 27 South. 481." Torrey v. Burney, 113 Ala. 496, 21 South. 348; 2 Jones on Ev. § 365 (367).

[4, 5] It is observed of the foregoing question of witness' judgment of Mr. Chandler's mental condition the day the alleged will was executed that the witness was not called upon to declare of the testamentary capacity of Mr. Chandler on said date, but only of decedent's mental condition; nor did the witness declare of his testamentary capacity in his answer, "I think his mind was not right." Sufficient familiarity and close acquaintance with decedent being shown, and the detailed facts on which he based his opinion of the mental condition of Mr. Chandler on the date inquired about (that of the execution of the will), the witness' qualification to give the opinion rested in the sound judicial discretion of the trial court—a discretion not reversible unless plainly erroneous. Woodward Iron Co. v. Spencer, 194 Ala. 285, 289 (3), 69 South. 902; Bates v. Oden, 198 Ala. 569, 73 South. 921, 922; Hale v. Hale, 201 Ala. 28, 75 South. 150; Wear v. Wear, 200 Ala. 345, 76 South. 111. We do not find that the trial court abused this sound judicial discretion in permitting the witness to answer the question as indicated. The question and answer were different from that in Miller v. Whittington, supra, where the witness drew the conclusion for the jury by declaring of decedent's testamentary capacity.

The last four assignments of error challenged the ruling of the court in permitting the witnesses Ault and Harden to reply to the respective questions: "Did Mr. A. T. Thomas have a conversation with you about Mr. Chandler making a will?" "State what, if anything, A. T. Thomas ever said to you about John A. Chandler making a will." Mr. Ault replied that he did have a conversation with such person in 1913, after the will was alleged to have been made, and Thomas stated that Chandler had talked to him about willing his property to the orphans' home,

but had died without making a will. The witness Harden testified that Thomas told him Mr. Chandler had never made a will, and it was the duty "of the Chandler heirs to look after this estate, as it was their business. * * * " This evidence was in rebuttal of the testimony of Atticus Thomas, the son of A. T. Thomas, deceased, one of the purported witnesses to the will, introduced by proponent to the effect that "after Mr. Chandler and Mr. Raynes had left our house that day and at the dinner table, I heard my father say to my mother that he didn't believe old man Chandler would live long and that he had made his will."

[6] It has not been decided in this jurisdiction whether the subsequent declarations or expressions of opinion of an attesting witness who at the time the will is propounded for probate is dead or absent—beyond the jurisdiction of the court—may be given in evidence to support or deny the validity of the will in issue. The nearest analogy found in our decisions is the rule denying the introduction in evidence of admissions against the interest of the proponent who is not the sole legatee (Seale v. Chambliss, 35 Ala. 19; Taylor v. Kelly, 31 Ala. 59, 73, 68 Am. Dec. 150), or if one of the several legatees (Blakey's Heirs v. Blakey's Ex'x, 33 Ala. 611, 617; Leslie v. Sims, 39 Ala. 161, 162; Eastis v. Montgomery, 93 Ala. 293, 297, 9 South. 311; 2 Jones, Ev. § 253 [254]; Hughes on Ev. p. 23; 1 Schouler on Wills, § 244). The same rule is applied to declarations of opinion by all third parties, even though they may have been subscribing witnesses to the will, as to the mental condition of the testator (except on the witness stand, under oath [Miller v. Whittington, supra]); they are held to be hearsay. That is to say, if the subscribing witness is dead or permanently absent from the jurisdiction, neither party can give in evidence extrajudicial declarations or opinions which such subscribing witness may have subsequently made regarding testator's mental capacity, for the purpose of invalidating the will. Stobort v. Dryden, 1 Mees. & W. 614; Mason v. Poulson, 40 Md. 355; Stirling v. Stirling, 64 Md. 138, 147, 21 Atl. 273; Baxter et al. v. Abbott, 7 Gray (Mass.) 71, 82; Sewall v. Robbins, 139 Mass. 164, 168, 29 N. E. 650; Boardman v. Woodman, 47 N. H. 120; Thompson v. Kyner, 65 Pa. 368; 1 Schouler on Wills, § 180; 1 Alexander's Comm. on Wills, § 371.

In some jurisdictions extrajudicial declarations by a subscribing witness to a will that the testator was lacking in mental capacity have been held admissible to rebut the prima facie case made by the declarant's attestation of such will. This, in effect, is held to be the best evidence in contradiction of the testimony the law presumes him to give on the proof of his signature. Townshend v. Townshend, 9 Gill (Md.) 506; Colvin v. Warford, 20 Md. 357; Black v. Ellis, 3 Hill (S. C.)

68; Abraham v. Wilkins, 17 Ark. 292; Mobley v. Lyon, 134 Ga. 125, 67 S. E. 668, 137 Am. St. Rep. 213, 19 Ann. Cas. 1004; Meeker v. Boylan, 28 N. J. Law, 274; Harden v. Hays, 9 Pa. 151; Losee v. Losee Ex'rs, 2 Hill (N. Y.) 609; McElwee v. Sutton, 2 Bailey (S. C.) 128; Smith v. Asbell, 2 Strob. (S. C.) 141; Wright v. Littler, 3 Burrows, 1244, 1255; Durham v. Beaumont, 1 Campb. 207, 210; Crouse v. Miller, 10 Serg. & R. (Pa.) 155; 1 Greenl. Ev. (16th Ed.) § 462, p. 593. The reason on which such decisions are rested is the necessities of the case, affording the best substitute for the opportunity of cross-examination, which has been lost by the death of the witness or his permanent absence from that jurisdiction.

Many courts have held that where a person's name appears as an attesting witness, when in fact he was not an attesting witness, the execution of the instrument can be proved without his testimony, or where the evidence was as to an alteration made after the attestation. Engles v. Bruington, 4 Yeates (Pa.) 345, 2 Am. Dec. 411; Sherwood v. Pratt, 63 Barb. (N. Y.) 137; Breton v. Cope, Peake, N. P. Cas. 30; Harding v. Cragie, 8 Vt. 501; Penny v. Corwithe, 18 Johns. (N. Y.) 499; Cussons v. Skinner, 11 Mees. & Wels. 160, 168. This line of decisions bears some analogy to the question before us.

[7] In the writer's opinion, declarations of a purported subscribing witness (who is dead or beyond the jurisdiction) to an alleged testamentary instrument challenged for forgery, to the effect that such instrument was not in fact executed by the alleged testator or was not attested by such declarant appearing on the face of such alleged will as a witness, are competent, if supported by other evidence tending to show such fraud or forgery, where the will is sought to be proved only by proof of the handwriting of such subscribing deceased witness. Such declarations standing alone would be entitled to little weight and should never be suffered to defeat the title without sufficient corroboration. When so safeguarded, it becomes the rule of necessity applicable to a case where the execution is denied and alleged to be a forgery. Reformed Dutch Church v. Ten Eyck, 25 N. J. Law, 40, 47.

Pretermitting a decision of the question of the competency of the subsequent declarations of A. T. Thomas, proponents having given in evidence such a subsequent declaration of the witness supporting the will, contestants make reply with like subsequent declarations of the same witness at other times, places, and to other persons to a contrary purport. Bank of Phœnix City v. Taylor, 196 Ala. 665, 669, 72 South. 264; Gibson v. Gaines, 198 Ala. 583, 590, 73 South. 929.

We find no reversible error in the record, and the decree of the probate court is affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.