DERSIS et al. v. DERSIS et al. (6 Div. 828.)

(Supreme Court of Alabama. Nov. 8, 1923.)

**l. Wills ⬡281 — Bill to contest will against executor individually not demurrable.**

A bill to contest a will showing in the body of the bill that the executor had qualified as such, and had taken charge of the estate, and calling for process making him a party to the action as such executor, *held* not subject to demurrer on the ground that, though not personally interested in the estate, he was made a party in his individual and not in his representative capacity, though he was not designated as executor in the caption, since the bill as a whole shows that he was joined in his representative capacity.

**2. Evidence ⬡474(4)—Nonexpert witness may testify as to whether man was conscious.**

In contest of will on the ground that testator, who died as a result of a wound in the head, was not mentally competent at the time of the execution of the will shortly before his death, a nonexpert witness who had carried the testator to the hospital after testator had received the wound, and who stayed all night with testator, could testify as to whether or not the testator was conscious during the night; any objection thereto going to its weight.

**3. Evidence ⬡502 — Nonexpert witness can be cross-examined as to foundation of opinion.**

Nonexpert witness giving an opinion can be cross-examined to test the foundation and accuracy of his opinion.

**4. Evidence ⬡471(1)—Opinions not admissible where facts can be expressed.**

Opinions should never be substituted for obtainable facts capable of expression in words.

**5. Evidence ⬡471(1)—Opinion of witness should not be remote, speculative, or illogical.**

An opinion given by a witness should not be remote, speculative, or illogical, or a compound of fact and law.

**6. Evidence ⬡498½—Whether witness should be permitted to give opinion is discretionary with court.**

Whether a witness should be permitted to give an opinion is discretionary with the trial court, and its action should not be disturbed unless it is apparent that some right of a party has been invaded or suppressed.

———

**7. Evidence ⬡472(8)—Answer to question calling for opinion on issue being tried held properly rejected.**

In a will contest on the ground of mental incompetency, refusal to permit a witness to answer question, "Was he conscious all of that time; did he know what he was doing?" *held* not error since the question called for a general opinion on the issue being tried by the jury.

**8. Evidence ⬡500—Question as to appearance of alleged incompetent testator held proper.**

In a will contest on the ground of mental incompetency, question, "What condition did you find the sick man (testator) in then?" *held* proper.

**9. Wills ⬡53(6)—Nonexpert's testimony as to physical appearance of wound held proper.**

In contest of a will executed by testator shortly before his death, as result of a wound in the head, in which it was claimed that the testator at the time of the execution of the will was mentally incompetent, it was permissible to show by a nonexpert witness that as defendant approached death the wound was exuding pus, and that the face became swollen.

**10. Evidence ⬡553(1)—Question asked physician as to mental capacity of person stabbed in brain not objectionable.**

In contest of will executed by testator shortly before his death after he had been stabbed in the head, question asked of a physician who had qualified as an expert witness as to whether a person who had received a stab in the brain could in the physician's opinion know what property he owned and what disposition of it he might want to make, *held* not objectionable as against contention that it implied that the testator must have been able to hold an inventory or complete detail of his property in mind.

**11. Evidence ⬡472(8), 506—Opinion as to whether testator had mental capacity to make will not admissible.**

In will contest on ground of mental incompetency, a witness, expert or nonexpert, cannot give an opinion as to whether decedent had mental capacity to make a will; such conclusion being one which the law draws from certain facts as premises.

**12. Wills ⬡21—Rule as to "mental competency" stated.**

A testator, to have sufficient mental capacity, must understand his property, its nature and kind, must comprehend the natural recipients of his bounty, and must have sufficient mental capacity to understand the nature of the disposition he is making of his property.

[Ed. Note.—For other definitions, see Words and . Phrases, Second Series, Mental Competency.]

**13. Wills ⬡52(1)—Contestants had burden of proving incompetency.**

In will contest on ground of mental incompetency, the burden of proof as to such issue was on the contestants.

**14. Wills ⬡329(3)—Instruction requiring jury to be "reasonably satisfied" as to capacity held to misplace burden of proof.**

In will contest on ground of mental incompetency, instruction requiring jury to be "reasonably satisfied that he [testator] was possessed of testamentary capacity at the time of the execution of the will" *held* objectionable, in that it misplaced the burden of proof, though it does not specifically refer to the burden of proof.

**15. Trial ⬡296(7)—Misleading instruction held harmless in view of other instructions.**

In will contest on ground of mental incapacity, instruction requiring jury to be "reasonably satisfied" that testator was possessed of testamentary capacity, though objectionable in that it misplaced the burden of proof, was harmless in view of other instructions expressly placing the burden of proof on contestants, in view of Supreme Court rule No. 45 (61 South. ix).

**16. Trial ⬡244(3), 253(8)—Refusal of charge singling out testimony held not error.**

In will contest on ground of mental incompetency, refusal of requested charge as to mental capacity to execute will *held* proper, in that it singled out the testimony, and did not hypothesize knowledge of the contents of the will.

**17. Trial ⬡260(1)—Refusal to repeat charge not error.**

Refusal of requested charge covered by other instructions *held* not error.

**18. Wills ⬡329(1, 2)—Instruction predicated on fact that testator was "able to think" held properly refused.**

In a contest of will on the ground of mental incompetency, refusal of requested charge predicated on testator's ability to think without requiring that testator did think *held* proper.

**19. Trial ⬡191(2)—Requested instruction held to invade province of jury.**

In contest of will on the ground of mental incompetency, instruction that "ordinarily, when a man of sound mind and memory executes a will by signing it and publishing it and calling on witnesses to attest, the presumption is that he knew the contents, and, if you are not reasonably satisfied these conditions of mind have been overturned by the evidence in this case with the burden of proof resting on the plaintiff, then the plaintiff must fail in this case," *held* properly refused, since it assumed certain facts to be true and invaded the province of the jury, and was misleading.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill of John Dersis, Eugenia Dersis, and an unnamed child of Cooley Dersis, by their next friend, Chas. Chafatinos, against Stella Dersis and Chris Jebeles. From a decree for complainants, respondents appeal. Affirmed.

Charge 2, given for complainants, is as follows:

---

"(2) The court charges you, gentlemen of the jury, that, inasmuch as the will involved in this proceeding was duly probated in the probate court, the burden of proof to establish the mental incapacity of the testator is on the contestants; and this presumption of capacity induced by the probate in the other court is overcome if you are reasonably satisfied from the evidence that at the time of the execution of the will the testator, Cooley Dersis, did not have mind and memory enough to understand his property, the objects of his bounty, and to know the nature of the testamentary act."

The following charges, requested by respondents, were refused:

"A. I charge you that, if you are reasonably satisfied from the evidence that Cooley Dersis had outlined to his attorney the way in which he wished to dispose of his property by will a short time before, and the will was drawn in accord with said instructions and submitted to Cooley Dersis at the time of its alleged execution, and he signified his assent thereto in any manner, and the jury believe that he understood the same to be his last will and testament, and the same was so accepted and signed by him as his individual voluntary act of his own mind or will, then the plaintiff has failed in this case, and I charge you that the burden of proof is on the plaintiff to prove to your reasonable satisfaction that the alleged execution, if it was executed by him, was not his individual and voluntary act, and not understood by him.

"B. I charge you, if you are reasonably satisfied that Cooley Dersis intended to exclude all his children, born or unborn, and leave his property to his wife as set out in the will, and the plaintiff has not convinced you that he was not mentally competent to execute said will, and did execute the same as his voluntary, conscious, and individual act, then you must find for the defendants."

"F. I charge you that, if the deceased had given instructions to an attorney to make a will, and the attorney prepared it in accordance with those instructions, all that is necessary to make it a good will under law, if executed by the testator according to the requirements of being properly attested, is that he should be able to think thus far: I gave my attorney instructions to prepare a will making a certain disposition of my property, and I do not doubt that he has given effect to my intentions, and I accept this instrument which is put before me as carrying it out; then if the plaintiff has failed to reasonably satisfy you that the deceased was not capable of understanding what was going on at the time and place of execution of the will plaintiff must fail in this case.

"G. I charge you that ordinarily, when a man of sound mind and memory executes a will by signing it and publishing it and calling on witnesses to attest, the presumption is that he knew the contents, and, if you are not reasonably satisfied these conditions of mind have been overturned by the evidence in this case with the burden of proof resting on the plaintiff, then the plaintiff must fail in this case."

F. D. McArthur, of Birmingham, for appellants

Only proper parties should be made to suits in chancery, such as are interested in the subject-matter at issue. Keith v. McCord, 140 Ala. 402, 37 South. 267. Nonexpert witnesses should be confined to statements of facts and not allowed to state their conclusions. White v. State, 136 Ala. 59, 34 South. 177; Heningburg v. State, 153 Ala. 13, 45 South. 246; 22 C. J. 498. Weakness does not prevent a person from devising by will. Testamentary capacity is addressed to the actual time of execution of will. Hall v. Perry, 87 Me. 569, 33 Atl. 160, 47 Am. St. Rep. 352; 28 R. C. L. 96; Taylor v. Kelly, 31 Ala. 72, 68 Am. Dec. 150; West v. Arrington, 200 Ala. 421, 76 South. 352; 40 Cyc. 144. The will must meet the desires of the testator, and may have been expressed before the time written, and be written by another at his instance without prejudice. Garrett v. Heflin, 98 Ala. 618, 13 South. 326, 39 Am. St. Rep. 89; Schieffelin v. Schieffelin, 127 Ala. 36, 28 South. 687; Barr v. Weaver, 132 Ala. 212, 31 South. 488; 28 R. C. L. 148; Couch v. Couch, 7 Ala. 519, 42 Am. Dec. 602. The law presumes testamentary capacity in presuming every man to be of sound mind until proven otherwise. 28 R. C. L. 144; Bancroft v. Otis, 91 Ala. 279, 8 South. 286, 24 Am. St. Rep. 904.

Vassar L. Allen, of Birmingham, for appellees.

The portion of the oral charge of the court to which exception was taken correctly states the law. Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33. Counsel discuss other questions, but without citing additional authorities.

BOULDIN, J. This is a bill in equity to contest the will of Cooley Dersis, deceased. The sole issue is the testamentary capacity of the decedent.

Cooley Dersis received a stab wound in the head, inflicted with a knife. He was removed to a hospital and put under the care of a nurse, physician, and surgeon. He was there visited by relatives and friends. The wound deprived him of the power of speech from the beginning until his death. Inflammation developed, pus formed and exuded from the wound, fever appeared, and he died in the hospital about the fifteenth day. The will was executed some 14 hours before his death. It bequeathed and devised all property, real and personal, to Stella Dersis, wife of decedent, charged with the support and education of their children. There were two children of tender years, and one after-born child. The will was admitted to probate in the probate court without contest, and Chris Jebeles, one of the alternate executors named in the will, qualified and took charge of the estate.

The bill is filed by the children of decedent, by next friend. A jury trial was had. Much testimony, expert and nonexpert, was presented on both sides as to the mental and

physical condition of decedent from the time his wound was received until his death, and especially at and about the time the will was made. This appeal presents rulings on demurrer to the bill, on the admission of testimony and on instructions to the jury. The demurrer is for misjoinder of parties. The point made is that Chris Jebeles, one not interested personally in the estate, is made respondent as an individual, and not in his representative character as executor of the estate.

The style of the case shown in the caption names as respondents "Stella Dersis and Chris Jebeles," without more. The body of the bill shows that Jebeles had qualified as executor and taken charge of the estate. The prayer calls for process "making the said Stella Dersis and Chris Jebeles, the latter as executor of the estate of Cooley Dersis, deceased, parties respondent hereto," etc.

[1] The suit, considering the whole bill, was against Jebeles in his representative character. The demurrer was properly overruled. Alabama City G. & A. Ry. Co. v. Heald, 178 Ala. 636, 59 South. 461; Lucas v. Pittman, 94 Ala. 616, 10 South. 603; Bryant v. Southern Ry. Co., 137 Ala. 488, 34 South. 562.

[2] Complainants' witness George Vratos testified that he carried Cooley Dersis to the hospital when he was wounded, and stayed all night with him. Witness was then asked the following question: "Was he or not conscious during the night?" It is insisted that it was error to admit the opinion of a nonexpert witness that the wounded man was not conscious. There is no need here to discuss at length the history and the reasons for the rules now obtaining in the admission of the opinions of nonexpert witnesses touching sanity or insanity. The early cases in Alabama refused such testimony, except from subscribing witnesses to a will. State v. Brinyea, 5 Ala. 243; McCurry v. Hooper, 12 Ala. 827, 46 Am. Dec. 280. Beginning with the leading case of Norris v. State, 16 Ala. 777, the rule has grown here, as in other states generally, to be briefly this: A witness shown to have such acquaintance, association, observation, or dealings with the person in question as to enable him to form an intelligent opinion may give his opinion whether such person is of sound or unsound mind. If his opinion is that the person is of unsound mind, it must be accompanied with such statement of the words, actions, appearance, or other indicia as the witness may reasonably give, showing the basis of his opinion. Florey's Ex'rs v. Florey, 24 Ala. 241; Woodward Iron Co. v. Spencer, 194 Ala. 285, 69 South. 902; 4 Wigmore on Evidence (2d Ed.) §§ 1933, 1934, 1938, note 1. An interesting discussion of the entire subject is found in Lawson on Expert and Opinion Evidence, rule 46, subrule 4, pp. 532 to 556.

The evidence here called for does not, strictly speaking, belong to the class above discussed. It relates to the mental state or condition induced by the sudden shock of a wound on the head. It goes without saying that it would be difficult, in many cases, if not impossible, for the ordinary observer to say at what moment a wounded or sick man passes the shadowy borderline between the conscious and the unconscious. Still, is there anything more perceptible than the difference between an active, alert mind, and one weakened, benumbed, or beclouded by great physical shock or disease? Intelligent mental action is commonly communicated by speech; but that is not the only way. Millions of ordinary people derive daily entertainment from reading the thoughts and emotions of men and women shown by mirrored facial expression, pose, and movement. All of us can read, not only the signs of mental life, but, generally, the primary emotions of love, joy, anger, hate, fear, or distress, as written on the human face; but who of us could give an intelligent description of such mental and emotional action? We see no reason why an arbitrary rule should obtain forbidding the giving of one's judgment upon matters upon which men do form and express intelligent judgment in daily intercourse. To do so is to shut the door to means of getting the truth in the courthouse which are recognized everywhere else in human affairs.

[3-6] We have often admitted evidence of generalizations as a statement of a collective fact. Many such are, in last analysis, the judgment expressed on related facts from which the ultimate fact, derived by the reasoning process, becomes manifest. It is generalized knowledge. Proper limitations and safeguards defined by law should be sternly applied. An eye to the best evidence should be open. Cross-examination to test out the foundation and accuracy of opinions is a fundamental safeguard. Opinions should never be substituted for obtainable facts capable of expression in words. The jury, and not the witness, must try the issue. The opinion should not be remote, speculative, or illogical. It must not be a compound of fact and law. A certain discretion is rightly vested in the trial courts in directing the search for the truth by this class of evidence, and their action should not be disturbed unless it is apparent some right of a party has been invaded or suppressed. We think a man sitting up all night with a sick man, or one grieviously wounded in the head, may form an opinion whether he is conscious or unconscious, which may be given to the jury for what it is worth.

[7] Respondents' witness Gus Lavas, on direct examination, was asked: "Was he conscious all of that time; did he know what he was doing?" The witness had just detailed the occurrences attending the execution of the will. "That time" in the question, related to the time the will was made. The

making of 'a will was "what he was doing" within the question asked. It is a double question. Its propriety is determined by the whole. An affirmative answer would have implied the presence of all those mental actions which constitute the elements of a valid will. It called for a general opinion on the whole issue being tried by the jury. It was properly rejected.

[8] There was no error in asking a witness: "What condition did you find the sick man in then?" It is difficult to frame a question less leading, but better intended to draw out those physical and other appearances proper for the jury. ·If the answer went out of bounds, a motion to exclude was the proper remedy.

[9] Likewise it was permissible to show by a nonexpert the change in the physical appearance of the wound as the end approached. The only evidence on the point presented by this assignment of error was to the effect that the wound was exuding pus and the face became swollen.

[10] Complainants' witness Dr. Edger Collins, after qualifying as an expert witness, testified to an examination of Cooley Dersis a few hours before the will was made. He was then asked the following question:

"Doctor, taking the history of that wound, that is, as given to you, a stab in the brain, inflicted about two weeks prior to this day and judging by his condition as you saw it on that occasion, state whether or not in your judgment that man at that time or within a few hours thereafter was in or could be in a mental condition to understand. ordinary affairs, particularly understand or know what property he owned, and what disposition of it he might want to make; was he or not in that condition?"

Respondents' objection being overruled, witness answered:

"Well, I don't think he was capable at the time, and I don't think that he could have become capable before his death."

The argument here presented is that this question and answer, if true, would not prove want of testamentary capacity, because the question implies the decedent must have been able to hold an inventory or complete detail of his property in mind. Assuming this construction of the question to be correct, it would not be a ground of objection thereto. It was not an instruction to the jury defining testamentary capacity. If this testimony called for a condition of mental debility which could coexist with testamentary capacity, to that extent there would be a failure of proof, when weighed by the jury under the rules of law defining testamentary capacity. A witness duly qualified may testify generally to unsoundness of mind.

"All evidence which tended to shed light on his mental status—the clearness and soundness of his intellectual powers—should have gone before them;" that is, the jury. Walker v. Walker's Exrs., 34 Ala. 469.

[11] A witness, expert or nonexpert, cannot give an opinion as to whether decedent had mental capacity to make a will. "It is a conclusion, which the law draws from certain facts as premises." Id.

In Wear v. Wear, 200 Ala. 345, 76 South. 111, this court reviewed the authorities on the ·question here involved. The point at issue in that case was whether a nonexpert witness might state that the decedent had not mental power to "transact ordinary business." The decision was to the effect that an expert can so testify, and a nonexpert may do so only after stating the facts upon which he bases his opinion on that point. We adhere to that view. Torrey v. Burney, 113 Ala. 496, 21 South. 348; Chandler v. Chandler, 204 Ala. 164, 85 South. 558; 22 C. J., p. 669, § 760.

The court below defined testamentary capacity thus:

"The test you will apply in determining that is, first, whether or not Cooley Dersis at the time of the making of this particular will had sufficient mental capacity to understand, first, his property, its nature and kind; second, whether or not he had sufficient mental capacity to understand and comprehend the natural recipients of his bounty, that is, his relatives and the ones he would naturally want to leave his money to; and then, third, whether or not he had sufficient mental capacity to understand the will that he made—to understand the nature of the disposition he was making; really understand the will—and to know what he was doing and how he was doing it, the nature of the instrument he was drawing."

[12] This is a correct statement of the law. Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33; Taylor v. Kelly, 31 Ala. 59, 68 Am. Dec. 150; Schieffelin v. Schieffelin, 127 Ala. 36, 28 South. 687; Wear v. Wear, 200 Ala. 345, 76 South. 111; Chandler v. Chandler, 204 Ala. 164, 85 South. 558.

[13-15] Complainants' given charge No. 1 contained the following:

"You cannot sustain the will offered for probate unless you are reasonably satisfied that he was possessed of testamentary capacity at the time of the execution of the will offered here."

This misplaced the burden of proof. The will was not offered for probate in the case at bar, and, if so, it should be sustained unless the jury were "reasonably satisfied that he was not possessed of testamentary capacity." This charge does not specifically refer to the burden of proof, but, standing alone, it would clearly imply a burden on defendant to reasonably satisfy the jury of testamentary capacity.

In charge 2, given for complainants, the probate of the will in the probate court is admitted, and the burden of proof expressly laid upon the contestants. In the court's oral

charge the burden of proof is expressly placed on the plaintiffs to "reasonably satisfy" the jury of want of testamentary capacity. The same express instruction is in charges 1, 2, 3, and 4, given for respondents. These several direct instructions cured any misleading effect of complainants' given charge No. 1. Supreme Court rule 45 (175 Ala. xxi, 61 South. ix).

We find no reversible error in complainants' given charge No. 2.

[16] Charge A, refused to defendants, singles out testimony, and does not hypothesize knowledge of the contents of the will.

[17] Charge B is a bit confused. It exacts too high degree of proof. So far as correct in principle, it was covered by other instructions.

Charges C and E relate to burden of proof, and were fully covered by other instructions.

[18] Charge F is faulty in many respects. It does not require that the decedent "did think," etc., but that he be merely "able to think," etc.

[19] Charge G assumes certain facts to be true, thus invading the province of the jury. It was misleading.

We find no reversible error in the record, and the decree of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, J., concur.

THOMAS, J. I concur in the opinion. The question to and answer of the witness Gus Lavas, one of the attesting witnesses to the will: " * * * Did he know what he was doing?" "Yes, sir"—were properly excluded. The context shows that an expression by the witness of testamentary capacity was called for, and not a declaration of testator's sanity or consciousness at the time the will was executed. Miller v. Whittington, 202 Ala. 406, 409, 80 South. 499; Councill v. Mayhew, 172 Ala. 295, 306, 55 South. 314; Shirley v. Ezell, 180 Ala. 352, 361, 60 South. 905. The answer would have drawn the conclusion of fact that only a jury or the judge trying the facts may draw.